Frances and Thomas KENDRICK d/b/a Georgia Paint & Body Works, Plaintiff,

v.

CITY COUNCIL OF AUGUSTA, GEORGIA, Defendant.

Civ. A. No. 179–266.

United States District Court,
S. D. Georgia,
Augusta Division.

June 19, 1981.

Victor C. Hawk, Augusta, Ga., for plaintiff.

Stephen E. Shepard, Samuel F. Maguire, Roy V. Harris, Augusta, Ga., for defendant.

## ORDER

BOWEN, District Judge.

The subject of this litigation is a tow-in contract for the removal of wrecked and abandoned vehicles within the limits of the City of Augusta, Georgia, which was awarded by the City of Augusta to one of plaintiff's competitors. The case is presently before the Court on defendant's motion for summary judgment.

By legal notice published on four successive days in October, 1979, defendant, the City Council of Augusta, Georgia, [City Council] invited sealed bids for a tow-in contract. The notice provided that the contract was for a period of three years commencing December 15, 1979. Bidders were requested to bid a storage charge of a twenty-four hour period, a tow-in charge for each vehicle, and a charge for removing vehicles from the Augusta Canal. The successful bidder was required to maintain two crews on duty and two wreckers in service at all times as well as execute a performance bond and provide liability insurance. Following the submission of bids, a subcommittee of the City Council was to inspect the premises and equipment of a prospective contractor to determine the bidder's ability to perform the contract. Defendant expressly reserved the right to reject any or all bids.

On October 30, 1979, the sealed bids were opened and tabulated. The tabulations showed that plaintiff, Georgia Paint & Body Works, bid $10.00 for tows each, $2.00 for storage per day and $25.00 for canal towing. Plaintiff's competitor, Terry's Paint & Body Works, Inc., which was ultimately awarded the contract, bid $16.00 for tows each, $2.65 for storage per day and $26.00 per hour with a $52.00 minimum. Of the four bidders tabulated, two of which are not at issue in this action, plaintiff made the lowest bid in two of the three services bid.

As set forth in the published notice, a subcommittee of the Augusta City Council Public Safety Committee was appointed to investigate the various wrecker services bidding on the tow-in contract. The members of this subcommittee were William C. Calhoun, Chairman, Sebron H. Butler, Sr., and M. D. Philpot, then Assistant Chief of Police. Of the three members, it appears that only Mr. Philpot visited the facilities of the wrecker services which bid on the contract. By letter to subcommittee chairman Calhoun, Mr. Philpot stated in pertinent part that he had visited the following companies:

2. Georgia Paint and Body Works

. . . .

Georgia Paint and Body Works is located at 578 13th Street. I visited this location at 1:45 P.M., November 27, 1979, and talked to Mr. Thomas Kendrick. Mr. Kendrick stated that he had storage area for 400 vehicles, operates 24 hours a day with two (2) wreckers and plans to add the third wrecker if he receives the City of Augusta contract. He also stated that his wreckers are equipped with two way radios. Georgia Paint and Body Works is also on the wrecker list for the Richmond County Sheriff's Department.

3. Terry's Paint and Body Works

. . . .

Terry's Paint and Body Works is located at 1346 Reynolds Street. I visited this location at 1:30 P.M., November 27, 1979, and found Mr. Terry at lunch. I talked with Mr. Dewey Terry later in the day and learned the following information. Mr. Terry stated that he could store 200 vehicles and operates 24 hours a day with three (3) wreckers. Mr. Terry's wreckers are equipped with police scanners without two way communication. Terry's Paint and Body Works is not on the Richmond County Sheriff's Department wrecker list.

At the conclusion of his letter, Mr. Philpot made the following relevant comments:

3. Terry's Paint and Body Works has no two way communication in his wreckers to communicate with his office for faster service.

4. Georgia Paint and Body Works with a $10.00 bid per tow is rather low. Mr. Kendrick feels he can make up the difference in repair work he receives by towing wrecks for the City.

See plaintiff's exhibit 1, attached to deposition of Sebron H. Butler.

On December 13, 1979, the subcommittee, through Chairman Calhoun, made the following report to the City Council Public Safety Committee:

The committee met and reviewed the bids for the tow-in contract. We checked the police records of the owners of these businesses and interviewed the various individuals who operate these businesses. We found that A. C. Proctor Paint & Body Shop is located six miles from the Police department. We felt it would be a great inconvenience to the owners of the cars to pick them up and to our officers to go outside the jurisdiction to conduct business in that location. The bid of Kendricks Paint & Body Works at $20.00 per tow is fairly high for 16 square miles they would cover under the contract with the City. Terry's Paint & Body Works has no two-way communication with his wreckers to communicate with his office for faster service. The bid of Georgia Paint & Body Works was the low bid and we thought it was rather low and I think Mr. Kendrick told Chief Philpot that he could make up the difference in repair work he receives from towing from the City. It seemed to the committee that

was a contingent thing that if he didn't repair wrecks he would lose money on it. There were pros and cons for all of these but we recommend that the contract be awarded to Terry's Paint & Body Works.

Upon the recommendation of the subcommittee, the Public Safety Committee accepted the bid submitted by Terry's Paint & Body Works, Inc.

Thereafter, plaintiff petitioned to the full City Council to reconsider the contract award made by the Public Safety Committee. On December 17, 1979, plaintiff, through his attorney, argued his motion for reconsideration of the Public Safety Committee's award to the City Council. After consideration of these arguments, the City Council voted overwhelmingly (12 yes, 2 no, 2 abstentions) to approve the award of the tow-in contract to Terry's Paint $ Body Works, Inc. This action was the seventh time since 1963 that the Augusta City Council awarded a multi-year tow-in contract to Terry's Paint & Body Works, Inc.

In the present action, plaintiff alleges several state law claims pendent to two federal law claims: (1) the conduct of the City Council allegedly deprived plaintiff of certain constitutional rights in violation of 42 U.S.C. §§ 1983, 1985; and (2) the conduct of the City Council allegedly amounted to a restraint on free and open competition in violation of the federal antitrust laws. By motion for summary judgment, defendant seeks judgment on the above-enumerated federal claims and concomitant dismissal of the pendent state claims for lack of subject matter jurisdiction.

## I

In Count Six of the complaint, plaintiff alleges:

> The conduct of the Defendants, deprived the Plaintiff of the following rights, privileges, and immunities as secured to it by the Constitution of the United States and Civil Rights Act of 1861 [sic] as follows:

> The right of the Plaintiffs are not to be denied their property without due process of law; the right to equal protection of the laws; the right to pursue their lawful occupation; and, to conduct business as secured by the 14th Amendment to the Constitution of the United States.

Since the right to pursue a lawful business is subsumed in the "property rights" claim, it is apparent that Count Six alleges two main deprivations of constitutional rights in violation of 42 U.S.C. §§ 1983, 1985: (1) a deprivation of a property interest without procedural due process under law, and (2) a denial of equal protection under law. Before considering the propriety of summary judgment in favor of defendant on one or both of these claims, it is beneficial to review the admittedly scant authority relevant to the "bidding" issue in this case.

In support of its position, the City Council cites Estey Corporation v. Matzke, 431 F.Supp. 468 (N.D.Ill.1976). There, plaintiff, an unsuccessful bidder on a state contract, alleged that a state agency unlawfully awarded the contract to one of plaintiff's competitors. On motion by defendant, the Estey court dismissed the complaint concluding that plaintiff had no standing under state or federal statute to challenge the award and that, as a mere bidder on a state contract, plaintiff had no property interest in the contract to support a claim under 42 U.S.C. § 1983. Specifically, with respect to the section 1983 claim, the court held that a property interest in a state contract "does not arise until such time as the contract is actually awarded." Id. at 470.

Recently, in Three Rivers Cablevision, Inc. v. City of Pittsburgh, 502 F.Supp. 1118 (W.D.Pa.1980), a case neither party cited, Judge Diamond rejected any blanket application of the Estey ruling that a losing bidder on a state contract had no property interest in the award thereof. Id. at 1132 n.15. Instead, the district court undertook an extensive analysis of the present law in the property interest/procedural due process area and concluded that, under the peculiar facts of the case before it, plaintiff, as an unsuccessful bidder, stated a claim under section 1983.

Pertinent to an understanding of the court's rationale in Three Rivers Cablevi-

*sion*, are certain factual allegations in plaintiff's complaint. The City of Pittsburgh decided to solicit bids for a cable television contract. Pursuant to this decision, the city enacted an ordinance to regulate strictly the prospective cable television system and to provide the basic contract terms and specifications which bidders must meet. The city further provided that all bids must meet the construction and service specifications set forth in the ordinance as a prerequisite to consideration for award of the contract. In stating its section 1983 claim, plaintiff alleged that its competitor, which was eventually awarded the contract, (1) failed in a significant and material respect to comply with bid requirements of the city ordinance, and (2) thereafter, met privately with certain officials for the purpose of amending the bid deficiencies.

Judge Diamond began his discussion of plaintiff's due process claim under section 1983 with a recitation of the so-called "entitlement doctrine," as articulated in *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1971):

"... To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it ....

Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement of those benefits ...."

502 F.Supp. at 1127 (quoting 408 U.S. at 577, 92 S.Ct. at 2709). From this conceptual foundation, the court initially concluded that "there can be no property interest in a procedure itself," *id.* at 1128–29; in other words, the unsuccessful bidder has no protected property interest in the adherence by the contract-awarding authority to its own regulatory procedure or controlling stat-

utes. *Id.* at 1128. Instead, the protected property interest, if any, "is to be found in the *benefit* whose enjoyment is sought to be regulated by the [contract-awarding] procedure." *Id.* at 1129 (emphasis in original). Thus, while the procedure for awarding a contract, and the awarding authority's compliance therewith, does not, in and of itself, amount to a property interest, a protected property interest may nonetheless exist in the sought-after benefit which, as stated by the *Roth* court, is created and defined by that procedure.

Turning, then, to the applicable city regulations and ordinances, the *Three Rivers Cablevision* court found that all prospective bidders were required to comply fully with the legislatively prescribed contract specifications, that any bids in noncompliance would not be considered, and that no amendments to bids would be allowed. Upon review of the facts as alleged in plaintiff's complaint, in light of these regulations and ordinances, it was apparent that while plaintiff substantially complied with the pertinent bidding procedure, plaintiff's competitor violated the procedure in several significant respects. Thus, in the terminology of *Roth*, while plaintiff conformed with the "existing rules or understandings" of the bidding procedure, from which the expected benefit or contract award emanated, a competitor of plaintiff's, which did not conform with the "existing rules or understandings," actually received the benefit defined by those rules or understandings. Such a factual situation amounts to a deprivation of a protected property interest and thereby states a claim under section 1983. As Judge Diamond concluded:

[The protected property] interest was the right of the lowest responsible bidder in full compliance with the specifications to be awarded the contract once the city in fact decided to make an award. The due process to which one possessing the protected interest was entitled was the nonarbitrary exercise by the city of its discretion in making the award. And it follows that a deprivation of the substantive benefit (the protected property inter-

est) without due process is an actionable wrong.

502 F.Supp. at 1131.

The district court in *Three Rivers Cablevision* properly rejected the general proposition implicit in *Estey* that an unsuccessful bidder on a state or municipal contract could never state a claim under section 1983. By the same token, however, not all unsuccessful bidders may seek redress in federal court for the alleged deprivation of a constitutional right. Clearly, dispositive in *Three Rivers Cablevision* were the unique factual allegations, in particular: (1) a regulated bidding procedure, (2) material compliance with the procedure by the unsuccessful bidder, and (3) material and significant noncompliance with the procedure by the successful bidder.

In contrast to *Three Rivers Cablevision*, there is no showing in the present case that plaintiff's competitor, Terry's Paint & Body Works, Inc., failed to conform fully with the "rules or understandings" of the bidding procedure. The bid submitted by Terry's Paint & Body Works, Inc., complied with the specifications set forth in the published legal notice soliciting bids; there is no evidence of any material deviation from the prescribed bidding procedure. While the bid was not the lowest bid submitted, the City Council was not bound by any rule or law to accept the lowest bid when perceived countervailing considerations were presented. The statement by City Councilman Washington, at the meeting of the Public Safety Committee, that "the low bid is not always the best bid" reflects the discretionary authority vested in the City Council to accept or reject a bid so long as it does not act unreasonably or arbitrarily. *See Singer v. City of Cordele*, 225 Ga. 323, 324–25, 168 S.E.2d 138 (1969).

■■■ On the record before the Court, it cannot be said that a fact issue exists which would support a finding that the City Council acted arbitrarily or unreasonably · in awarding the tow-in contract. The City Council undertook an investigation of the prospective bidders, held a hearing on the comparative qualifications of the wrecker services at a meeting of the Public Safety Committee, and afforded· plaintiff a fair opportunity to present its case at a full meeting of the City Council. Yet, as recognized by the *Three Rivers Cablevision* court, even if the City Council had not acted within the bounds of its discretionary authority, such a breach would not, by itself, amount to a deprivation of a protected property interest, since plaintiff has no property interest in the City Council procedure. *See* 502 F.Supp. at 1128–29.

Since, in rebuttal to defendant's motion, plaintiff has made no counter-showing sufficient to bring its claim within the narrowly defined property interest recognized in *Three Rivers Cablevision*, the pleadings and discovery on file do not present facts sufficient to state a claim for the deprivation of a property interest remediable under section 1983. Accordingly, summary judgment is granted in favor of defendant on plaintiff's property interest claim averred in Count Six.

■■■ A similar conclusion must follow for plaintiff's equal protection claim. There is no suggestion that the pertinent bidding procedure utilized by the City Council either engendered a classification adversely affecting a suspect class of which plaintiff is a member or infringed upon one of plaintiff's fundamental rights. Furthermore, there is no countervailing showing by plaintiff sufficient to present jury question that the bidding procedure, although neutral on its face, was applied unequally. Accordingly, summary judgment is granted in favor of defendant on plaintiff's equal protection claim under section 1983 and Count Six of plaintiff's complaint is dismissed.

## II

In Count Seven of its complaint, plaintiff alleges:

The conduct of the Defendants constitutes a course of conduct amounting to a conspiracy in direct violation of the Federal Anti-Trust Laws by entering into a contract with Terry's Paint & Body Works in order to restrain free and open competition.

From these allegations, it appears that plaintiff is attempting to state a claim under section one of the Sherman Act, 15 U.S.C. § 1. In its motion for summary judgment, the City Council argues that the protection of the Sherman Act does not enure to the benefit of all unsuccessful bidders on municipal contracts and places reliance on the pronouncement of the Fifth Circuit that: "[t]he Sherman Act is neither a lowest-responsible-bidder statute nor a panacea for all business affronts which seem to fit nowhere else." *Scranton Construction Company, Inc. v. Litton Industries Leasing Corporation*, 494 F.2d 778, 783 (5th Cir. 1974), *cert. denied*, 419 U.S. 1105, 95 S.Ct. 774, 42 L.Ed.2d 800 (1975).

■ Section one of the Sherman Act, 15 U.S.C. § 1, provides in pertinent part:

Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared illegal.

While the statute proscribes every concerted restraint of trade, "courts have long interpreted this language to prohibit concerted activity which *unreasonably* restrains trade." *Aladdin Oil Co. v. Texaco, Inc.*, 603 F.2d 1107, 1113, (5th Cir. 1979). As a general matter, in order to prevail on a section one claim, plaintiff must show (1) concerted action, (2) an unreasonable restraint of trade, and (3) a sufficient effect upon interstate commerce in order to establish federal jurisdiction. *See Consolidated Farmers Mutual Insurance Co. v. Anchor Savings Association*, 480 F.Supp. 640, 648 (D.Kan.1979).

Although not argued by defendant, the Court perceives serious jurisdictional defects in plaintiff's allegations under section one of the Sherman Act. As the Supreme Court has stated: "The jurisdictional reach of § 1 . . . is keyed directly to effects on interstate markets and the interstate flow of goods." *Gulf Oil Corporation v. Copp Paving Co.*, 419 U.S. 186, 194, 95 S.Ct. 392, 397, 42 L.Ed.2d 378 (1974). The precise jurisdictional parameters of section one was summarized by the Court in *Hospital Bldg.*

*Co. v. Rex Hospital Trustees*, 425 U.S. 738, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976):

It is settled that the Act encompasses far more than restraints on trade that are motivated by a desire to limit interstate commerce or that have their sole impact on interstate commerce. "[W]holly local business restraints can produce the effects condemned by the Sherman Act." *United States v. Employing Plasterers Assn.*, 347 U.S. 186, 189 (1954). As long as the restraint in question *"substantially and adversely affects interstate commerce,"* *Gulf Oil Corp. v. Copp Paving Co.*, 419 U.S. 186, 195 (1974); *Mandeville Island Farms, Inc. v. American Crystal Sugar Co.*, 334 U.S., at 234, the interstate commerce nexus required for Sherman Act coverage is established.

*Id.* at 743, 96 S.Ct. at 1851 (emphasis added); *see also Goldfarb v. Virginia State Bar*, 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975); *United States v. Yellow Cab Co.*, 332 U.S. 218, 67 S.Ct. 1560, 91 L.Ed. 2010 (1947).

■ A review of plaintiff's complaint shows no allegations that the alleged conspiracy between the City Council and Terry's Paint & Body Works, Inc. "substantially and adversely affects interstate commerce." Moreover, an examination of the record before the Court provides no basis upon which the Court might conclude that the alleged conspiracy affects interstate commerce in any way, much less in a substantial and adverse manner. The place of business of all the prospective bidders was in the State of Georgia, and, of course, by the terms of the tow-in contract all automobiles towed would necessarily be located within the City of Augusta limits. Taking the allegations of plaintiff's complaint as true, the Court finds no facts showing that the alleged conspiracy in violation of section one of the Sherman Act substantially and adversely affects interstate commerce. *Cf. Hospital Bldg. Co. v. Rex Hospital Trustees*, 425 U.S. 738, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976) (in which the Court reversed dismissal of a complaint upon finding several averments by plaintiff that the alleged section

one violation substantially affected interstate commerce).

■ Even assuming that proper jurisdictional facts exist, the Court concludes that, based upon the pleadings and discovery on file, genuine issues of material fact do not exist to support plaintiff's Sherman Act claim. The proper standard on a motion for summary judgment in an antitrust action was articulated by the Fifth Circuit as follows:

> [Summary judgment] is appropriate . . . when "it is plain that the allegedly unlawful practice does not exist, and that plaintiff's claim is without merit." The mere allegation of the Sherman Act claim requirements of a contract, combination, or conspiracy for the purpose of restraining trade or interstate commerce and resulting damages are not sufficient to withstand a motion for summary judgment once they have been rebutted.

*Solomon v. Houston Corrugated Box Co., Inc.*, 526 F.2d 389, 393 (5th Cir. 1976).

By attached exhibits, the authenticity of which are undisputed, defendant has shown that the decision to award the tow-contract was a fair and open process undertaken by the City Council (i. e. bids were publicly solicited, prospective bidders were investigated, the Public Safety Committee of the City Council reviewed the investigation and recommendations therein, and unsuccessful bidders were given the opportunity to appeal the decision of the Public Safety Committee to the full City Council). Upon this showing by defendant, the burden was on plaintiff to produce some significant probative evidence that a concerted action in restraint of trade was undertaken between the City Council and Terry's Paint & Body Works, Inc. *See Scranton Construction, supra*, 594 F.2d at 782.

■ Concerted action is an essential element of a conspiracy allegation under section one of the Sherman Act. As one district court has commented, a section one violation requires:

> (1) two or more persons (2) acting in concert. The second requirement, concerted

action, is usually defined as referring to a consensus or agreement by the parties to act together.

*Consolidated Farmers, supra*, 480 F.Supp. at 648 (quoting *J. Von Kalinowski, Business Organizations: Antitrust and Trade Regulations* § 6.01[3], pp. 6–42 to 6–43 (1979)). On the record before the Court, after ample time for full discovery, there is no significant probative evidence that the City Council, in awarding the tow-in contract, acted together with Terry's Paint & Body Works, Inc. in a consensus or an agreement. Furthermore, even assuming concerted action, the Court does not find significant probative facts showing that such action constituted a proscribed trade restraint under either the *per se* standard, *see Gough v. Rossmoor Corp.*, 585 F.2d 381, 386 (9th Cir. 1978), or the rule of reason standard. *See United States v. Topco Associated*, 405 U.S. 596, 607, 92 S.Ct. 1126, 1133, 31 L.Ed.2d 515 (1972). The Court reiterates the admonition of the Third Circuit Court of Appeals:

> The Sherman Act plays a vital, central role in our economic system. It has been described as the "Magna Carta of free enterprise . . . as important to the preservation of economic freedom and our free-enterprise system as the Bill of Rights is to the protection of our fundamental personal freedoms." But just as the Bill of Rights cannot be invoked to protect individual citizens from all forms of personal affront, the Sherman Act cannot proscribe all unseemly business practices. The manipulation of the bids of businessmen, as evidenced in the case at bar, was clearly reprehensible. Nonetheless, the Sherman Act may not be extended beyond its intended scope and used to police the morals of the marketplace.

*Sitkin Smelting & Refining Co. v. FMC Corp.*, 575 F.2d 440, 448 (3rd Cir. 1978).

Accordingly, summary judgment is granted in favor of defendants on Count Seven of plaintiff's complaint. The remaining pendent state claims of plaintiff's complaint are dismissed without prejudice.