L & H SANITATION, INC., Frank Fiore, Chester D. Johns, d/b/a Heber Springs Sanitation, W.R. Brown, d/b/a Brown Bag, Raymond Goff, Carl and Kerry Philamlee, Leon Lackey and Merford Bell, Plaintiffs,

v.

LAKE CITY SANITATION, INC. H.G. Smith, Richie A. Lee, Richard L. Johnston, Harold R. Verser, Joel Pilkinton, Raymond E. Robus, John E. Evans, Newton Burl Parish and J.C. Hawkins, Defendants.

No. B–C–82–93.

United States District Court,
E.D. Arkansas, N.D.

March 2, 1984.

Merl Barns, Little Rock, Ark., Terry Lynn, Heber Springs, Ark., for plaintiffs.

Mark W. Grobmyer, Little Rock, Ark., for Lake City Sanitation.

J. Russell Green, Heber Springs, Ark., Patrick R. James, Little Rock, Ark., for others.

## ORDER

EISELE, Chief Judge.

There remains in this case a single claim founded on federal jurisdiction, and it is the subject of a pending motion to dismiss. For the reasons stated below, the motion will be granted.

The following facts appear to be undisputed by all parties. In 1981, the city of Heber Springs was notified by the State of Arkansas that it would have to close its city dump for pollution reasons no later than late spring or early summer of 1982. In late fall of 1981 city and county officials met with officials from Lake City Sanitation ("Lake City") to discuss the possibility of franchising the waste collection service to Lake City. This meeting was apparently held at the request of Lake City. Lake City subsequently prepared a proposal for the city officials, while the city officials, on the other hand, appointed a committee to recommend a solution for the solid waste disposal problem facing the city. Sometime after being formed, the committee considered Lake City's proposal, but decided that it would be better under the circumstances to award the contract for waste collection after soliciting bids. A notice for bids was advertised on December 9, 1981, stating as follows:

## NOTICE FOR BIDS

The Mayor of the City of Heber Springs, Cleburne County, Arkansas is accepting bids on a contract beginning December 9th, 1981 at 9:00 a.m. through December 16th, 1981 at 12:00 p.m.

The Contract will grant a franchise to a person, firm, or corporation for collection, transportation and disposal of solid waste within the City.

A copy of the Contract and bidding instructions is available at the Office of the Mayor, Municipal Building, Heber Springs, Cleburne County, Arkansas. The City reserves the right to refuse any, all, or any and all bids.

Plaintiff L & H Sanitation ("L & H") submitted its bid on December 16, 1981, as a corporation although it did not file its articles of incorporation with the Arkansas Secretary of State until January 4, 1982.

The city received two bids for the waste collection franchise, one from Lake City and one from L & H. After opening the two bids, the mayor and the city attorney studied them. The city then apparently decided not to make any immediate decision on the award, although L & H had submitted the lower bid.

On January 6, 1982, a representative of the Arkansas Department of Pollution Control and Ecology, Mr. Jim Beardon, attended a meeting with city officials. Officials of Lake City were also invited to, and did, attend that meeting. Apparently officials of L & H were not invited and, indeed, according to L & H, its officials were refused entry into the meeting. At the meeting the city awarded the waste collection franchise to Lake City in return for Lake City's agreeing to modify its bid to give city residents the option of having Lake City haul their waste or hauling it themselves to the landfill at no charge.

The city argues that the award of the waste collection contract was made in a manner that was not arbitrary and capricious. It supports its argument by contending that it had to close its city dump within six to eight months and therefore needed quickly to put into operation an alternative waste-collection and disposal system. In selecting Lake City as the successful bidder, the city claims it took into account that: (1) Lake City had been operating a sanitation service since April of

1981, while L & H was just being formed as a corporation and had no experience in operating a sanitation service; (2) L & H made its contract absolutely contingent on its being able to secure a landfill site and get it approved by the EPA, while Lake City required no such contingency as to its bid since it had EPA-approved landfill sites available for its use; (3) L & H was not incorporated at the time it submitted its bid and could have reneged on the contract, while Lake City was a viable business corporation and liable for its contracts; and (4) although L & H submitted the lower bid, in light of the above factors and the concession made by Lake City to allow residents to haul their own waste to Lake City's landfill at no expense, the city believed that Lake City offered a better value for the dollar, and therefore was the lowest *responsible* bidder.

The plaintiff L & H claims that the award was a "sweetheart deal" in that the city from late fall 1981 had, essentially in conspiracy with Lake City, predetermined that Lake City, one of whose principal owners was the brother-in-law of a member of the city council, would receive the contract. L & H states that the following evidence will support such allegations: First, Lake City and city officials met and discussed a possible contract before bids were solicited. Second, only one week, as opposed to a customary three, was allowed in which to submit bids, and the bid notice itself was much less detailed than usual bid notices set out by the city. Third, L & H had difficulty obtaining bidding instructions and contract forms from the city. Fourth, the sample contract it was given by the city had attached to the back a draft contract of what appeared to be the bid of Lake City which should not have even been opened by that date. Fifth, after both bids were opened the mayor announced that both bids would be rejected, ostensibly because L & H had, surprisingly, submitted the lower bid. Sixth, the contract was awarded at a special private meeting to which Lake City was invited, and attended, while L & H was not invited. Indeed, L & H states that when it did find out about the meeting it attempted to join in but was confronted by a locked door and told to leave by the mayor.

As the Court stated in its Memorandum entered on October 19, 1982, there is but a limited ground of federal jurisdiction potentially remaining in this case, and that is, whether under 42 U.S.C. § 1983 and the Fourteenth Amendment the plaintiff can sustain a cause of action on the ground that the city through its officials acting in concert with Lake City deprived L & H of a protected property interest by failing to follow its own procedures and by awarding the waste collection contract to Lake City in an arbitrary and capricious manner, and also whether the defendants denied L & H the equal protection of the laws by awarding the contract to Lake City in an arbitrary and capricious manner.

■ In order to establish a Fourteenth Amendment claim for a denial of due process, the plaintiff must first demonstrate the deprivation of a protected property or liberty interest. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). Once such an interest has been established, the issue becomes whether the plaintiff received the process that was due. *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972).

■ In the case at bar, L & H claims that it was deprived of a protected property interest in not being awarded the sanitation contract. What expectations constitute protected "property interests," however, have not been clearly defined. The Supreme Court gave some guidance in *Roth* by noting that:

To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is the purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined.

*Roth*, 408 U.S. at 577, 92 S.Ct. at 2709 (citations omitted).

It is also axiomatic that property interests are not created by the Constitution, but "are created and their dimensions defined by existing rules or understandings that stem from an independent source such as state law ...." *Id.* With respect to unsuccessful bidders for government contracts, it was consistently held in past years that an unsuccessful bidder has no property interest by which to invoke procedural due process protection. The rule was succinctly stated in *Estey Corp. v. Matzke*, 431 F.Supp. 468, 470 (N.D.Ill.1976), in which the court held: "This Court does not agree with plaintiff that a bidder on a state contract has a property interest in the contract. Such an interest does not arise until such time as the contract is actually awarded to him." In support of its conclusion, the court in *Estey* stated:

> In *Perkins v. Lukens Steel*, 310 U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1108 (1940) the Supreme Court recognized that although government contract bidding procedures may benefit the public generally, those procedures do not create enforceable rights in bidders.
>
>    \*    \*    \*    \*    \*    \*
>
> The rationale of the *Perkins* case is still viable today and operates to preclude judicial challenges by unsuccessful bidders except when specific legislation allows it.

*Estey*, 431 F.Supp. at 439 (emphasis added) (the court noted, however, that congressional passage of 5 U.S.C. § 702 now allows bidders on *federal* contracts to challenge contract awards by federal agencies).

L & H contends that it does possess a property interest created by state legislation, in that once the city decides to invite competitive bidding on a contract:

> [T]he mayor or his duly authorized representative, shall invite competitive bidding thereon by legal advertisement in any local newspaper; bids received pursuant to said advertisement shall be opened and read on the date set for receiving said bids in the presence of the mayor, or his duly authorized representative, together with any committee that may be named by the mayor or the governing body for this purpose, and the officials designated to receive such bids shall have exclusive power *to award the bid to the lowest responsible bidder;* provided, however, the mayor and any committee designated to receive bids may reject any and all bids received ....

Ark.Stat.Ann. § 19–4425 (emphasis added). Under this procedure, L & H contends, the decision-maker does not have exclusive power to award the bid to just anyone. Rather it has the exclusive power to award the bid only to "the lowest responsible bidder."

L & H further supports its position with a line of recent United States district court cases which have held that under a state statute requiring that a contract be awarded to the "lowest responsible bidder," while at the same time reserving to the city the right to reject all bids, an unsuccessful bidder who was the *lowest responsible bidder* in full compliance with the specifications of the bidding procedure had a legitimate expectation, and therefore a property interest, in being awarded the contract once the city decided to make an award. *Teleprompter of Erie, Inc. v. City of Erie*, 567 F.Supp. 1277 (W.D.Pa.1983); *Douglas N. Higgins, Inc. v. Florida Keys*, 565 F.Supp. 126 (S.D.Fla.1983); *Teleprompter of Erie, Inc. v. City of Erie*, 537 F.Supp. 6 (W.D.Pa.1981); *Kendrick v. City Council of Augusta, Georgia*, 516 F.Supp. 1134 (S.D.Ga.1981); *Three Rivers Cablevision v. City of Pittsburgh*, 502 F.Supp. 1118 (W.D. Pa.1980).

The court in *Douglas N. Higgins* provided an excellent synopsis of the three previously decided cases on this issue. Starting with *Three Rivers Cablevision,* and noting its reliance on the *Roth* case, the court went on to say the following with respect to *Three Rivers Cablevision* and its progeny:

> The court initially concluded that there can be no property interest in the procedures themselves; that is, the plaintiff

did not possess a property interest "in the adherence by council to the procedures outlined" by the ordinances. Instead, the protected property interest "is to be found in the *benefit* whose enjoyment is sought to be regulated by the procedure; namely, the award of the contract."

Thus, while the procedure for awarding a contract, and the awarding authority's compliance therewith, does not, in and of itself, amount to a property interest, a protected property interest may nonetheless exist in the sought-after benefit which, as stated by the *Roth* court, is created and defined by that procedure. *Kendrick, supra,* 516 F.Supp. at 1138 (interpreting *Three Rivers*).

Turning to the facts, the *Three Rivers* court concluded that while plaintiff substantially complied with the bidding procedures, plaintiff's competitor violated the procedures in several respects. Thus, in the terminology of *Roth,* while the plaintiff conformed with the "existing rules or understandings" of the bidding procedure, from which the expected benefit emanated, plaintiff's competitor did not conform with the "existing rules or understandings" but actually received the benefit defined by those rules or understandings. As the court concluded:

> [I]n the circumstances of this case a property interest of relatively narrow dimension exists. Simply stated, that interest was the right of the lowest responsible bidder in full compliance with the specifications to be awarded the contract once the city in fact decided to make an award. The due process to which one possessing the protected interest was entitled was the nonarbitrary exercise by the city of its discretion in making the award. And it follows that a deprivation of the substantive benefit (the protected property interest) without the process due is an actionable wrong.

*Three Rivers, supra,* 502 F.Supp. at 1131.

Of course, not all unsuccessful bidders may seek redress in federal court under section 1983. As stated by another court:

> Clearly dispositive in *Three Rivers Cablevision* were the unique factual allegations, in particular:
>
> (1) a regulated bidding procedure, (2) material compliance with the procedure by the unsuccessful bidder, and (3) material and significant noncompliance with the procedure by the successful bidder.

*Kendrick, supra,* 516 F.Supp. 1139.

The court used the same analysis to find that, in addition to a denial of due process, there was a denial of equal protection also actionable under section 1983.

Two other district courts have interpreted and followed the *Three Rivers* case. In *Kendrick, supra,* a disappointed bidder for a city tow-in contract filed a section 1983 claim against the city which awarded the contract to a competitor. The court there agreed with the conclusions reached in *Three Rivers* but denied plaintiff relief on grounds that there was no showing that the competitor's bid did not comply with the bidding specifications. In *Teleprompter of Erie, supra,* the court agreed with its sister court's *Three Rivers* decision in holding that the plaintiff stated a sufficient claim to defeat a motion to dismiss.

*Douglas N. Higgins,* 565 F.Supp. at 128–29.

The Court agrees that an unsuccessful bidder may have a protected property interest. However, the Court disagrees with the rationale of the *Kendrick* decision which makes the existence of the property interest in the unsuccessful bidder contingent upon "noncompliance" with the bidding procedure by the successful bidder. If a property interest exists at all, it must evolve from the expectations of the plaintiff and the entitlement granted by state law irrespective of actions or omissions of third parties. *Teleprompter* supports this reasoning. There the Court found the narrowly protected property interest of the unsuccessful bidder to be "the right of the

most responsible bidder in full compliance with the specifications of state and municipal law to be awarded the [contract]." *Teleprompter,* 567 F.Supp. at 1287–88 (assuming, of course, that an award was made). The *Teleprompter* court cited *Three Rivers Cablevision* in support of its holding, but did not make mention of the three requirements that case set out as necessary to establish the property interest.

This Court finds further support for the basic rule, unfettered by *Three Rivers Cablevision's* three criteria, in *Winsett v. McGinnes,* 617 F.2d 996 (3rd Cir.1980), a case relied upon in *Three Rivers Cablevision.* There the court found a protected liberty interest in obtaining work release from prison in the provisions regulating its disbursement, even though permitting work release was discretionary. The *Winsett* court stated:

> In Delaware, there are specific criteria for work release which we believe if met, give rise to a liberty interest in work release. Although discretion is vested in the prison authorities to grant or deny work release, that discretion must be exercised consistently with the purpose and policy behind work release. We hold that a state-created liberty interest in work release arises when a prisoner meets all eligibility requirements under the state regulations and the exercise of the prison authorities' discretion is consistent with work release policy. We conclude that Winsett had a protectible liberty interest in work release because he met all eligibility criteria under the Delaware regulations and the considerations influencing the discretionary denial of work release, namely concern for public reaction and fear of legislative reprisals, were outside the legitimate bounds of the prison officials' discretionary power. In other words, had they acted within the permissible scope of their discretion, Winsett would have been granted work release. To hold otherwise, would mean that the state-created interest in work release for eligible prisoners could be overridden simply by the prison officials' abuse of discretion. We therefore conclude that Winsett had a liberty interest protectible under the fourteenth amendment's guarantee of due process. *Winsett,* 617 F.2d at 1007.

In the case of *Greenholtz v. Nebraska Penal Inmates,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979), the Supreme Court made it clear that although there was no liberty interest in being paroled, once the state enacted a statute giving the Parole Board discretionary power to grant parole upon an inmate's meeting certain criteria, the inmate then became possessed of a constitutionally protected liberty interest in the *expectation* of parole upon meeting the statutory requirements. As was stated by the Supreme Court:

> We can accept respondents' view that the expectancy of release provided in this statute is entitled to some measure of constitutional protection. However, we emphasize that this statute has unique structure and language and thus whether any other state statute provides a protectible entitlement must be decided on a case-by-case basis.

*Greenholtz,* 442 U.S. at 12, 99 S.Ct. at 2106. *See also Hixon v. Durbin,* 560 F.Supp. 654, 659 (E.D.Pa.1983) ("An entitlement may exist with respect to a benefit which is sought but not yet obtained whenever state law limits the exercise of discretion by the state official responsible for conferring the benefit.") (citing *Winsett, Teleprompter,* and *Three Rivers Cablevision*); *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 431, 102 S.Ct. 1148, 1155, 71 L.Ed.2d 265 (1982) (right to use adjudicatory procedures is a species of property protected by the Fourteenth Amendment).

Finally, it is essential to note that in *Walt Bennett Ford v. Pulaski County Special School District,* 274 Ark. 208, 211–12, 624 S.W.2d 426, 428 (1981), the Arkansas Supreme Court overruled its prior decisions and, reasoning that "the most practical way to protect the public interest is to allow unsuccessful bidders to seek judicial review of any alleged wrong in the contracting procedure," held that "an unsuc-

cessful bidder [on a public contract] does have standing to sue for alleged wrongs ...." Although couched in terms of standing and not "property interest," this Court believes that the Arkansas Supreme Court has recognized an entitlement of legitimate expectation arising under the Arkansas statutes which inures to the benefit of a responsible, albeit unsuccessful, low bidder.

■ In sum, this Court holds that, under Arkansas law governing competitive bidding on public contracts, the lowest responsible bidder in compliance with the bidding specifications and procedures has a legitimate expectation in being awarded the contract once the governmental body makes a decision to award the contract on which bids were solicited. The law was well stated by the court in *Hixon:*

> The principle to be derived from *Logan, Winsett,* and *Three Rivers* is a simple one. When state law provides that a given benefit which constitutes "property" or "liberty" (i.e., money damages to redress unlawful discrimination, admission into a work-release program, or a cable television franchise) shall be conferred upon those who take the requisite procedural steps and meet the requisite substantive standards, the right of an individual who has taken the requisite procedural steps to have his claim of entitlement to the benefit decided, not arbitrarily, but in accordance with state law, itself constitutes an interest protected by the due process clause. Because the interest does not arise until the individual claiming entitlement to the benefit has taken the requisite procedural steps (i.e., has filed a charge of discrimination with the appropriate agency, or has filed a facially adequate application to a work-release program, or has bid for a contract which a municipality is required to award to the lowest responsible bidder), the class of those entitled to the protection of the due process clause is, in each case, appropriately limited.

*Hixon,* 560 F.Supp. at 661.

■ Having concluded that an unsuccessful bidder in Arkansas, who is the lowest responsible bidder in full compliance with the bidding procedures, has a limited property interest in the expectation of being awarded the contract, if indeed it is awarded at all, the question becomes: what process is due the unsuccessful bidder? In this type of case, there are essentially two levels of process that are potentially "due." The first is self evident. The unsuccessful bidder, like any bidder, is entitled to the non-arbitrary exercise by the city of its discretion in making the award. *Douglas N. Higgins, Inc. v. Florida Keys Aqueduct Authority,* 565 F.Supp. at 129. The second level of process, which is afforded to the plaintiffs herein, is recourse to the state courts to challenge the award of the bid on the grounds that the city "acted in bad faith, with favoritism, or for any reason except a determination that [awarding the contract to Lake City] was in the best interest of the City." *Worth James Construction Co. v. Jacksonville Water Commission,* 267 Ark. 214, 217, 590 S.W.2d 256, 258 (1980) (reaffirming that taxpayers and ratepayers have standing to challenge bid award); *Walt Bennett Ford, supra* (holding that an unsuccessful bidder has standing to challenge bid award). In light of the process which is available in the Arkansas courts to all the plaintiffs in the case at bar, the dispositive issue in this case is whether plaintiffs have made out a sufficient claim under section 1983.

Before addressing that issue directly, the Court notes that plaintiffs have included an equal protection claim in their complaint. The Court concludes, however, that this is simply a recast of plaintiffs' due process allegations. And because the classification alleged herein by the plaintiffs is the granting of an economic benefit unfairly (i.e., applying the facially neutral bidding procedure unequally so as to favor Lake City over L & H), the same arbitrary and capricious standard of review that is required for plaintiffs' due process claim also applies to their equal protection claim. Therefore both claims can be treated as one for the purpose of this analysis. As

was stated by the court in *Chesapeake Bay Village, Inc. v. Costle,* 502 F.Supp. 213, 266 (D.Md.1980):

> Absent an infringement of a "fundamental right" or the use of a "suspect classification," the rational basis test is the proper standard of review for both substantive due process and equal protection challenges to governmental action. Plaintiff's claims involve only economic rights, and since they are based on the same set of facts, they may be joined together for the purpose of analysis. *Wincamp Partnership v. Anne Arundel County,* 458 F.Supp. 1009, 1025 n. 16 (D.Md.1978).
>
> Under the rational basis test, the state and county defendants may not exercise their authority in an arbitrary, capricious, or unreasonable manner. To be sustained, their exercise of authority must be shown to bear a rational relationship to a legitimate governmental objective. *See Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 314–16, 96 S.Ct. 2562, 2567–68, 49 L.Ed.2d 520 (1976) (equal protection); *Goldblatt v. Town of Hempstead,* 369 U.S. 590, 594–96, 82 S.Ct. 987, 990–91, 8 L.Ed.2d 130 (1962) (substantive due process).

■ In order to state a claim under 42 U.S.C. § 1983, plaintiffs must allege, as they have in this case, a deprivation of property *without due process of law.* The Court concludes that, although L & H would have a property interest (if the evidence showed that it was the lowest responsible bidder in material compliance with the contract) and although the citizen plaintiffs do have standing to sue the city and its officials on the bid award, the plaintiffs are, nevertheless, not being deprived of their property without due process because they have available to them a full and fair opportunity in the state courts of Arkansas to seek redress for their grievances concerning the awarding of the bid to Lake City. Therefore, they have failed to state a claim for relief under section 1983.

In a case recently decided by this Court, *Sutton v. Marianna School District,* 573 F.Supp. 159 (E.D.Ark.1983), it was held that, even assuming a teacher in Arkansas had a protected property interest in having her teaching contract non-renewed only for non-arbitrary or non-capricious reasons, her federal constitutional rights to procedural and substantive due process were nonetheless protected because the state provided her with administrative and judicial remedies when her contract was nonrenewed. Therefore she had no cause of action under section 1983. The Court finds the *Sutton* case to be indistinguishable from the case at bar. In *Sutton* the plaintiff claimed she possessed a legitimate expectation of continued employment, but was deprived thereof for arbitrary and capricious reasons. In the instant case, L & H alleges that it too was deprived, for arbitrary and capricious reasons, of a legitimate expectation to be awarded a contract. Most important, as in *Sutton,* plaintiffs herein do not contend that there was an absence of procedures available by which to fairly select a successful bidder or that those procedures were inadequate. Rather their whole case is premised on the allegations that the statutory and municipal bidding procedures were not followed and were administered in an arbitrary and capricious manner. Thus they claim that the state and municipal laws *themselves* were violated by government officials. The following from the *Sutton* decision is applicable to this point:

> [T]he court in *Atencio v. Board of Education of Pensaco Indep. Sch. Dist.,* 658 F.2d 774, 779 (10th Cir.1981), held that, although a state may grant a teacher a property right that is protected by the Fourteenth Amendment, "the mere fact that a discharge may not be in accordance with state law does not necessarily mean that there has been a federal constitutional violation where hearings are available such as New Mexico affords Atencio." In that case a New Mexico school superintendent brought an action pursuant to § 1983 claiming that his discharge from employment was incorrectly

based on the school district's claims that his work performance was unsatisfactory. The court found that even though the school board's conclusions regarding plaintiff's work performance might have been erroneous, that was "not enough to establish a federal constitutional claim." *Id.* at 780 (citing and quoting from *Wood v. Strickland,* 420 U.S. 308, 96 S.Ct. 992, 43 L.Ed.2d 214 (1975)). The *Atencio* court also relied on the *Scheelhaase [v. Woodbury Central Community School Dist.,* 488 F.2d 237 (8th Cir.1973) ] case to support its conclusions.

In summing up its decision, the court in *Atencio* stated:

> Where a property right is involved such as Mr. Atencio's which is protected by the Due Process Clause, it may not be taken away "without adherence to the minimum procedures required by that Clause." *Goss v. Lopez,* 419 U.S. 565, 574, 95 S.Ct. 729, 736, 42 L.Ed.2d 725. That Clause, however, has been adhered to in our opinion since Atencio was afforded a Local Board hearing for presentation of his evidence and assertion of his claim of denial of the state conference procedures, and since he has an appellate procedure therefor as well. His federal due process rights are not infringed and he may pursue his state law claims before the State Board and state courts.

*Atencio,* 658 F.2d at 781 (footnote omitted).

Just as in the *Atencio* case, L & H was afforded a procedure for having its bid considered and, having claimed that that procedure was violated and the decision rendered was arbitrary and capricious, L & H also had available recourse to the courts of Arkansas to determine the merits of such claims. Likewise the other plaintiffs in the instant case had available the benefit of state and municipal laws and procedures to guarantee that the bid serving the best interests of the citizens would be accepted by the city. And, having claimed the best bid was not accepted, those plaintiffs also have recourse to the courts of Arkansas.[1]

The Court finds further support for its position in *Light v. Blackwell,* 472 F.Supp. 333 (E.D.Ark.1979), *aff'd,* 620 F.2d 307 (8th Cir.1980), a case in which plaintiffs alleged that their real property had been taken by officials of the Arkansas State Highway Commission without just compensation and due process of law. The Court, in holding that plaintiffs had failed to state a claim under section 1983, stated:

> The Court also finds merit in defendants' contention that the complaint fails to state a substantial constitutional violation necessary to invoke jurisdiction under 42 U.S.C. § 1983. The complaint alleges that plaintiffs have been deprived of their constitutional right of due process because of the unlawful taking of their property without payment of just compensation in violation of the Fifth and Fourteenth Amendments. The plaintiffs here have not been deprived of due process since due process remedies are available to the plaintiffs in state court for the alleged taking of their property.

*Light,* 472 F.Supp. at 336.

Finally, this Court finds that the United States Supreme Court decision in *Parratt*

---

1. In fact, Chester Johns, a plaintiff in the instant suit, brought a suit in Cleburne County Chancery Court on March 25, 1982, challenging the actions of the city. Although, as defendants point out, this raises issues of collateral estoppel and res judicata, the Court will not address them for a number of reasons. First, it is not necessary in order to dispose of the motion to dismiss. Second, the record is inadequate in that neither the pleadings nor a transcript from the chancery court has been submitted by either party from which the Court could determine if the issue of the conduct of the individual city officials in awarding the contract was put in issue, or if only the issue of the validity of the ordinance authorizing the exclusive franchise was litigated. Third, the defendants do not contend that the issue of the bid award was litigated in the state court, and the chancellor's decree simply states that Ordinance No. 406 is valid and that the city, acting through its officials, did not act in an arbitrary and capricious manner, implying this was so with respect to passage of the ordinance as no mention is made of the awarding of the contract. In any event, this Court leaves the potentially serious issues relating to collateral estoppel and res judicata open and unresolved.

*v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), supports its conclusion that plaintiffs have failed to state a claim under section 1983. In that case the Court found that the respondent had failed to state a claim under section 1983 for the tortious loss of his property by state officials, even though he suffered a deprivation of property within the meaning of the Fourteenth Amendment, because all process due him was provided by the state's tort claims law and procedures.

The *Parratt* decision has raised a great deal of controversy as to whether a plaintiff can maintain a section 1983 action for a deprivation of property when the state affords him an adequate remedy, that is, "due process." See the excellent discussion by Judge Marshall in *Begg v. Moffitt,* 555 F.Supp. 1344, 1353–65 (N.D.Ill.1983). Since *Parratt,* however, the Supreme Court has made one issue clear: *Parratt* is not applicable in the case where the state's procedures themselves, by operation of law, destroy a plaintiff's property interest. *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982).

In *Logan* the plaintiff, who alleged that he was unlawfully terminated from his job because of a handicap, properly filed a complaint with the Illinois Fair Employment Practices Commission which was under a statutory duty to convene a factfinding conference within 120 days of the charge being filed. For reasons not clear, the Commission scheduled the conference 5 days after the 120 days had expired and the Illinois Supreme Court held that failure to convene within the 120 days deprived the Commission of jurisdiction and dismissed the plaintiff's charge. Thus it was the state procedure *itself,* as interpreted by the Illinois Supreme Court, that served to deprive the plaintiff of his property interest in employment. To the argument that *Parratt* required the dismissal of plaintiff's appeal because he had other state law remedies available, the United States Supreme Court stated:

> This argument misses *Parratt's* point. In *Parratt,* the Court emphasized that it was dealing with "a tortious loss of ... property as a result of a random and unauthorized act by a state employee ... not a result of some established state procedure." 451 U.S., at 541 [101 S.Ct., at 1916]. Here, in contrast, it is the state system itself that destroys a complainant's property interest, by operation of law, whenever the Commission fails to convene a timely conference—whether the Commission's action is taken through negligence, maliciousness, or otherwise. *Parratt* was not designed to reach such a situation.

*Logan,* 455 U.S. at 435–36, 102 S.Ct. at 1158.

This Court emphasizes again that the plaintiffs in the instant case do not allege that the state and municipal procedures themselves were inadequate or served to deprive them of a protected interest. Rather, they allege that the municipal officials *applied* those procedures in an unauthorized way (i.e., arbitrarily and capriciously) to deprive them of their protected interests. In other words, the alleged deprivation did not occur as a result of some established state or municipal procedure, but as a result of *the alleged unauthorized conduct* of municipal officials to follow the procedures themselves. It is in this latter type of situation, where the plaintiff alleges only violations of state law by state officials in depriving it of a property interest *and* the state affords plaintiff redress, that *Parratt* applies.

Likewise, as in *Parratt,* plaintiffs herein allege no violations of the United States Constitution other than the single Fourteenth Amendment claim that municipal officials violated state law by awarding the sanitation contract in an arbitrary and capricious manner. *See Parratt,* 451 U.S. at 536, 101 S.Ct. at 1913 ("Respondent here refers to no other right, privilege, or immunity secured by the Constitution or federal laws other than the Due Process Clause of the Fourteenth Amendment *simpliciter.*"). Furthermore, plaintiffs do not allege any "predeprivation" hearing was necessary or even applicable in the circumstances of this case. *See id.* at 541, 101 S.Ct. at 1916. In

actuality, the whole bidding procedure itself was a "predeprivation" procedure, if viewed in the negative, or a "pre-award" procedure if viewed in the positive.

The Court in *Parratt*, 451 U.S. at 542, 101 S.Ct. at 1916, also quoted with approval the following passage from *Bonner v. Coughlin*, 517 F.2d 1311, 1319 (7th Cir. 1975), *modified en banc*, 545 F.2d 565 (1976), *cert. denied*, 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 529 (1978):

> It seems to us that there is an important difference between a challenge to an established state procedure as lacking in due process and a property damage claim arising out of the misconduct of state officers. In the former situation the facts satisfy the most literal reading of the Fourteenth Amendment's prohibition against "State" deprivations of property; in the latter situation, however, even though there is action "under color of" state law sufficient to bring the amendment into play, the state action is not necessarily complete. For in a case such as this the law of Illinois provides, in substance, that the plaintiff is entitled to be made whole for any loss of property occasioned by the unauthorized conduct of the prison guards. We may reasonably conclude, therefore, that the existence of an adequate state remedy to redress property damage inflicted by state officers avoids the conclusion that there has been any constitutional deprivation of property without due process of law within the meaning of the Fourteenth Amendment.

In sum, the Court finds that the plaintiffs have one claim remaining in this case. That claim is that the municipal officials of Heber Springs, in conspiracy with Lake City Sanitation, failed to adhere to established state and municipal procedures for awarding contracts on a competitive bid basis, and, moreover, awarded the sanitation contract at issue to Lake City in an arbitrary and capricious manner. The court has found that the plaintiff L & H has established that if it proved (which the Court accepts it has for the purposes of resolving this motion) it was the lowest responsible bidder in compliance with the bidding specifications and procedures, then it had a legitimate expectation to be awarded the bid, i.e., a limited property interest. Furthermore, all of the plaintiffs here, under Arkansas law, have standing to challenge in the Arkansas courts the actions of the municipal defendants as being arbitrary and capricious and, if successful, to obtain relief.

The plaintiffs allege nothing more than a violation of state law by state officials, depriving them of a property interest. The plaintiffs allege no deprivation of any other constitutional or federal right or privilege. The Court concludes that plaintiffs are not without the benefit of due process of law in the state courts of Arkansas for the vindication of their state-created rights. Plaintiffs have therefore failed to state a claim under 42 U.S.C. § 1983. Accordingly, the case must be dismissed.

It is therefore Ordered that defendants' motion to dismiss be, and it is hereby, granted.