679 F.Supp. 908 (1988)
M.C. THOMAS CONSTRUCTION CO., et al., Plaintiffs,
v.
CITY OF ST. LOUIS, MISSOURI, et al., Defendants.
No. 88-197 C (5).
United States District Court, E.D. Missouri, E.D.
February 19, 1988.
Vickers, Moore & Weist, Eric E. Vickers, St. Louis, Mo., for plaintiffs.
Julian Bush, Patricia Hart, St. Louis, Mo., for defendants.

MEMORANDUM AND ORDER
LIMBAUGH, District Judge.
In January 1988, defendants began soliciting bids for the renovation of four fire stations in the City of St. Louis, Missouri. Plaintiff M.C. Thomas Construction Company (M.C. Thomas) submitted a bid of $1,346,000.00, which was the apparent low bid. The next lowest bidder was John Kalicak Construction, Inc. (Kalicak), which submitted a bid of $1,445,669.00. After opening the bids, it was determined that the total of the line items of M.C. Thomas' bid did not equal the final total of the bid. After the Board of Public Services recalculated M.C. Thomas' bid, the total was approximately $300,000.00 higher than the bid originally submitted by M.C. Thomas. Based on the recalculation, the new low bidder was Kalicak.
On February 2, 1988, plaintiffs M.C. Thomas Construction Company and the St. Louis Minority Contractors Association, Inc., filed a complaint against the City of St. Louis, Missouri and the City of St. Louis Board of Public Services seeking temporary and permanent injunctions enjoining defendants from rejecting M.C. Thomas' bid and letting the contract to another bidder. Although the contract has not been awarded at this time, defendants have conceded that, in all likelihood, M.C. Thomas' bid will be rejected and Kalicak will be awarded the contract. On February 2, 1988, the Court denied plaintiffs' motion for temporary restraining order, with the assurance by defendants that they would not proceed with the bidding process until after the Court ruled on plaintiffs' request for a preliminary injunction. A hearing was held on February 11, 1988 to determine whether a preliminary injunction should issue. That is the issue now before the Court.
In Dataphase Systems, Inc. v. C.L. Systems, Inc., 640 F.2d 109 (8th Cir.1981), the court set forth the list of considerations to be applied by district courts in considering requests for preliminary injunctive relief:

*909 Whether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest.
Dataphase, 640 F.2d at 113.

Threat of Irreparable Harm.
Plaintiffs assert that M.C. Thomas would suffer irreparable harm if defendants award the contract to Kalicak rather than M.C. Thomas. In Melvin C. Thomas' affidavit, he states that he may not be able to continue his business if his company is not awarded this contract. Plaintiffs cite Associated Producers Co. v. City of Independence, 648 F.Supp. 1255 (W.D.Mo.1986), for the proposition that threat of business failure constitutes irreparable harm sufficient to issue a preliminary injunction. In that case, the plaintiff had a contract with the City of Independence which provided 90%-95% of plaintiff's revenues. When the city threatened to cancel the contract, plaintiff sued for specific performance, contending that the city's action would bankrupt the company. Id. at 1258. The court enjoined the city from cancelling the contract, but noted that a plaintiff must have more than the mere threat of harm to its business for equity to intervene.
Here, the contractual relationship between the parties was for a fifteen-year period. Plaintiff had a legitimate expectation that if it complied with the terms of the Contract, the City would purchase coal from plaintiff for that period. The City concedes that it would be difficult for plaintiff to survive the cancellation of the contract. As required by ABA Distributors' interpretation of Semmes, plaintiff is an established enterprise with a legitimate expectation of a continuing contractual relationship with the City that will be destroyed if the City is not enjoined from cancelling the Contract. Money damages awarded after plaintiff is in bankruptcy will not fully compensate for the loss of plaintiff's business.
Associated Producers, 648 F.Supp. at 1259 (citing ABA Distrib. v. Adolph Coors Co., 661 F.2d 712, 714 (8th Cir.1981), and Semmes Motors, Inc. v. Ford Motor Co., 429 F.2d 1197 (2d Cir.1970)).
It is clear that M.C. Thomas does not have a "legitimate expectation of a continuing contractual relationship" with the City of St. Louis. Assuming that its business would be in better condition financially if the contract were awarded to M.C. Thomas, that fact alone does not rise to the level of irreparable harm required for the issuance of a preliminary injunction.
Further, the Court believes plaintiffs have available to them adequate legal remedies to redress any violations that may have occurred. Even if there was not a violation of M.C. Thomas' constitutional rights, that is not to say that there was not a violation of its contractual rights. If that is the case, then plaintiffs will be able to recover damages for the violation of those rights.

Balance Between Harm to Plaintiff and Harm to Defendants.
The City of St. Louis contends that the issuance of an injunction would threaten the entire renovation project. This project is financed with tax exempt bonds which require the expenditure of all bond issue monies by November 1989. The failure to do so would result in removing the tax exempt status of the bonds. Apparently, taxing the bonds would have a detrimental effect on this project, as well as other city projects.
As the Court has indicated above, there may be some threat of harm to plaintiff M.C. Thomas if it is not awarded the contract by the city. However, this threat does not outweigh the possible harm to defendants if the city were not allowed to proceed with the bidding process. The balance of equities seems to fall in favor of the defendants here.

Possibility of Success on the Merits.
Plaintiffs have filed their claim pursuant to 42 U.S.C. § 1983, alleging that defendants *910 have deprived plaintiff M.C. Thomas of its constitutional right to due process. Plaintiffs contend that L & H Sanitation, Inc. v. City Sanitation, Inc., 769 F.2d 517 (8th Cir.1985), establishes that the lowest responsible bidder on a public contract has a protected property right. Defendants argue that, under Missouri law, an unsuccessful bidder does not have any property rights.
L & H Sanitation clearly directs the Court to look to state law to determine whether a property right exists. In that case, the court of appeals stated:
The district court held that "under Arkansas law governing competitive bidding on public contracts, the lowest responsible bidder in compliance with the bidding specifications and procedures has a legitimate expectation in being awarded the contract once the governmental body makes a decision to award the contract on which bids were solicited."
L & H Sanitation, 769 F.2d at 523 (quoting L & H Sanitation, Inc. v. Lake City Sanitation, Inc., 585 F.Supp. 120, 126 (E.D.Ark. 1984)). In making that determination, the district court looked to the Arkansas statutes governing competitive bidding by cities. Ark.Stat.Ann. § 19-4425, which required the contract to be awarded to the lowest responsible bidder, created the property right. L & H Sanitation, 585 F.Supp. at 123.
Recognizing that the Court should look to state law to determine the existence of a property right, defendants cite Metcalf & Eddy Services v. City of St. Charles, 701 S.W.2d 497 (Mo.App.1985), for the proposition that Missouri does not recognize the existence of a property right in an unsuccessful bidder. In that case, the court ruled in the city's favor for two reasons: first, the city ordinances provided for the awarding of bids "on the basis of the lowest and best bid;" and second, the city's proposal for bids expressly reserved the absolute right to reject any and all bids. The court of appeals concluded:
This court recognizes "the principle of law that where a public body reserves the right to reject any and all bids that are submitted to it, they are empowered to do just that and by rejecting a bid they create no vested interest or property right in the rejected bidder."
Metcalf & Eddy Services, 701 S.W.2d at 499 (quoting La Mar Construction Co. v. Holt City, R-II School Dist., 542 S.W.2d 568, 570 (Mo.App.1976)).
The same conclusion is required here. Art. XXII, Section 4 of the St. Louis City Ordinances deals with the letting of contracts on public projects. In pertinent part, the ordinance states, "Said board shall let the work by contract to the lowest responsible bidder on the plans and specifications finally adopted except as herein otherwise provided.... Said board may reject any or all bids submitted and readvertise the work." (emphasis added). The clear language of the ordinance can lead to no other conclusion. The city is within its rights to determine to which bidder, if any, it will award the contract. This language does not create any property rights in the unsuccessful bidders. The Court does not believe the likelihood of success on the merits is very great.

Public Interest.
The public is clearly interested in seeing its tax dollars being put to the most efficient use. In this case, the bond requirements mandate that the renovation of the St. Louis fire stations not be interrupted by the issuance of an injunction here. As the Court has stated above, if there have been violations of plaintiffs' rights, be they constitutional or contractual, plaintiffs' legal remedies will adequately redress those violations.
Accordingly,
IT IS HEREBY ORDERED that plaintiffs' motion for preliminary injunction is DENIED.