L & H SANITATION, INC., Frank Fiore, Chester D. Johns d/b/a Heber Springs Sanitation, W.R. Brown d/b/a Brown Bag, Raymond Goff, Carl and Kerry Philamee, Leon Lackey and Merford Bell, Appellants,

v.

LAKE CITY SANITATION, INC., H.G. Smith, Richie A. Lee, Richard L. Johnston, Harold R. Verser, Joel Pilkington, Raymond E. Robus, John E. Evans, Newton Burl Parish, and J.C. Hawkins, Appellees.

No. 84–1516.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 14, 1984.

Decided Aug. 9, 1985.

Merl Barns, Little Rock, Ark., for appellants.

Patrick James, Little Rock, Ark., for appellees.

1. The Honorable G. Thomas Eisele, Chief Judge, United States District Court for the Eastern District of Arkansas.

Before McMILLIAN, Circuit Judge, BRIGHT, Senior Circuit Judge, and BOWMAN, Circuit Judge.

McMILLIAN, Circuit Judge.

L & H Sanitation, Inc., Frank Fiore, Chester D. Johns d/b/a Heber Springs Sanitation, W.R. Brown d/b/a Brown Bag, Raymond Goff, Carl and Kerry Philamee, Leon Lackey, and Merford Bell appeal from a final order entered in the District Court[1] for the Eastern District of Arkansas dismissing their antitrust and civil rights claims. *L & H Sanitation, Inc. v. Lake City Sanitation, Inc.*, 585 F.Supp. 120 (E.D.Ark.1984) (order dismissing civil rights claims); *L & H Sanitation, Inc. v. Lake City Sanitation, Inc.*, No. B-C-82-93 (E.D.Ark. Oct. 19, 1983) (order dismissing antitrust claims). For reversal appellants argue that the district court erred in holding (1) their antitrust claims were barred by the state action immunity doctrine and (2) their civil rights claims were barred by the availability of adequate state remedies. For the reasons discussed below, we affirm the order of the district court.

The following statement of facts is largely based upon the statement of facts set forth in the district court's 1984 order, as reported in 585 F.Supp. at 121-22. The City of Heber Springs, Arkansas (the city), had operated a city landfill for many years. During the late 1970s the Arkansas State Department of Pollution Control and Ecology (Department of Pollution Control) became increasingly concerned about the condition of the city landfill. In 1981 the Department of Pollution Control notified the city that it would have to close the landfill for pollution control reasons no later than late spring or early summer 1982. The city investigated the possibility of purchasing a new landfill site or operating a new landfill site as a joint venture with Cleburne County (the county) and a local corporation. However, the city's inquiries were not successful.

In late fall 1981, the city and county officials discussed contracting for solid waste disposal with officials of appellee Lake City Sanitation, Inc. (Lake City), a private corporation engaged in the business of solid waste disposal. This meeting was apparently held at the request of Lake City. Lake City submitted a proposal to city officials. The city's Finance and Budget Committee studied the landfill problem and apparently favored the franchise solution proposed by Lake City, but recommended that the city should award the franchise after soliciting bids. On December 8, 1981, the city council by resolution authorized the mayor and the city clerk to solicit and accept bids and to enter into a franchise contract. A notice for bids was placed in a local newspaper on December 9, 1981.

Only Lake City and appellant L & H Sanitation submitted bids for the city solid waste disposal franchise. The mayor and the city attorney opened and studied the bids. L & H Sanitation's bid was the lower bid. However, the city attorney was reluctant to accept the L & H Sanitation bid because it was conditioned upon the city's permitting L & H Sanitation to use the existing city landfill until L & H Sanitation's landfill site was approved by government environmental protection agencies. As noted above, pollution problems caused by the existing city landfill had prompted the city to investigate solid waste disposal alternatives. Lake City's bid was essentially a price list of available services and involved the use of Lake City's own landfills.

The city rejected both bids and decided not to make any immediate decision. On January 6, 1982, there was a meeting of city officials and a representative from the Department of Pollution Control. Lake City officials were invited and did attend the meeting. However, officials from L & H Sanitation were not invited and, when they appeared, were asked to leave the meeting. At this meeting the city awarded the solid waste disposal franchise to Lake City. Lake City accepted an additional modification giving city residents the option of hauling their own solid waste to Lake City's landfill at no charge.

On February 9, 1982, the city council passed Ordinance No. 406 creating a solid waste franchise for the city, awarding the franchise to Lake City and making violation of the ordinance a criminal misdemeanor.

In August 1982 appellants filed this action in federal district court, alleging federal antitrust and civil rights violations. Appellant L & H Sanitation is the unsuccessful bidder; appellant W.R. Brown is a city resident and a commercial user of solid waste disposal services; appellant Frank Fiore is a city resident and a residential user of solid waste disposal services; the other appellants are also city residents who provided solid waste disposal services before Ordinance No. 406 was passed. Appellee Lake City is the successful bidder; the other named appellees are the mayor and city council members. Appellants claimed that the city's award of the exclusive solid waste disposal franchise to Lake City was a "sweetheart deal" and the result of a conspiracy between the city and Lake City in restraint of trade and to create a monopoly in violation of §§ 1, 2 of the Sherman Antitrust Act, 15 U.S.C. §§ 1, 2. Appellants also alleged common law conspiracy to restrain trade, intentional interference with contractual relations, and due process and equal protection violations.

## ANTITRUST CLAIMS

■ In a comprehensive memorandum opinion, the district court dismissed appellants' antitrust claims, finding that appellees were shielded from antitrust liability for the city's award of the exclusive solid waste disposal franchise to Lake City by the state action immunity doctrine. *L & H Sanitation, Inc. v. Lake City Sanitation, Inc.*, No. B–C–82–93, slip op. at 2–8 (E.D. Ark. Oct. 19, 1983), *citing Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). The district court reviewed the Arkansas statutory scheme for solid waste management and concluded that "the [state] legislature has 'clearly articulated

and affirmatively expressed' a policy of regulation of waste management which empowers municipalities to impose anticompetitive restraints by granting private parties the exclusive rights for the collection and disposal of solid waste." Slip op. at 7. We believe the district court's finding of state action immunity is correct.

The application of the state action immunity doctrine to anticompetitive municipal conduct was recently discussed by the Supreme Court in *Town of Hallie v. City of Eau Claire*, —— U.S. ——, 105 S.Ct. 1713, 1716–17, 1720–21, 85 L.Ed.2d 24 (1985) (citations and footnotes omitted; emphasis in original):

The starting point in any analysis involving the state action doctrine is the reasoning of *Parker v. Brown*. In *Parker*, relying on principles of federalism and state sovereignty, the Court refused to construe the Sherman Act as applying to the anticompetitive conduct of a State acting through its legislature. Rather, it ruled that the Sherman Act was intended to prohibit *private* restraints on trade, and it refused to infer an intent to "nullify a state's control over its officers and agents" in activities directed by the legislature.

Municipalities, on the other hand, are not beyond the reach of the antitrust laws by virtue of their status because they are not themselves sovereign. Rather, to obtain exemption, municipalities must demonstrate that their anticompetitive activities were authorized by the State "pursuant to state policy to displace competition with regulation or monopoly public service."

The determination that a municipality's activities constitute state action is not a purely formalistic inquiry; the State may not validate a municipality's anticompetitive conduct simply by declaring it to be lawful. On the other hand, in proving that a state policy to displace competition exists, the municipality need not "be able to point to a specific, detailed legislative authorization" in order to assert a successful *Parker* defense to an antitrust suit. Rather, *City of Lafayette* [*v. Loui-siana Power & Light Co.*, 435 U.S. 389, 410, 98 S.Ct. 1123, 1135, 55 L.Ed.2d 364 (1978),] suggested, without deciding the issue, that it would be sufficient to obtain *Parker* immunity for a municipality to show that it acted pursuant to a "clearly articulated and affirmatively expressed ... state policy" that was "actively supervised" by the State....

. . . .

... In *California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, [445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980),] a unanimous Court held that supervision is required where the anticompetitive conduct is by private parties. In [*Community Communications Co. v.*] *City of Boulder* [, 455 U.S. 40, 51–52 n. 14, 102 S.Ct. 835, 840–41 n. 14, 70 L.Ed.2d 810 (1982) ], however, the most recent relevant case, we expressly left this issue open as to municipalities. We now conclude that the active state supervision requirement should not be imposed in cases in which the actor is a municipality.

... [T]he requirement of active state supervision serves essentially an evidentiary function: it is one way of ensuring that the actor is engaging in the challenged conduct pursuant to state policy. In *Midcal*, we stated that the active state supervision requirement was necessary to prevent a State from circumventing the Sherman Act's proscriptions "by casting ... a gauzy cloak of state involvement over what is essentially a private price-fixing arrangement." Where a private party is engaging in the anticompetitive activity, there is a real danger that he is acting to further his own interests, rather than the governmental interests of the State. Where the actor is a municipality, there is little or no danger that it is involved in a *private* price-fixing arrangement.... Once it is clear that state authorization exists, there is no need to require the State to supervise actively the municipality's execution of what is a properly delegated function.

*Accord Scott v. City of Sioux City,* 736 F.2d 1207, 1210–16 (8th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1864, 85 L.Ed.2d 158 (1985); *Central Iowa Refuse Systems, Inc. v. Des Moines Metropolitan Solid Waste Agency,* 715 F.2d 419, 423–28 (8th Cir.1983), *cert. denied,* —— U.S. ——, 105 S.Ct. 1864, 85 L.Ed.2d 158 (1985); *Gold Cross Ambulance v. City of Kansas City,* 705 F.2d 1005, 1010–15 (8th Cir.1983), *cert. denied,* —— U.S. ——, 105 S.Ct. 1864, 85 L.Ed.2d 158 (1985); *see generally* P. Areeda, Antitrust Law ¶ 212 (Supp.1982). "These [Eighth Circuit] cases analyzed the state action immunity issue in two steps: First, the state legislature must have authorized the challenged municipal activity. Second, the legislature must have intended to displace competition." *Scott v. City of Sioux City,* 736 F.2d at 1211. "[T]he state policy to displace competition can be inferred 'if the challenged restraint is a necessary and reasonable consequence of engaging in the authorized activity.'" *Id.,* citing *Gold Cross Ambulance v. City of Kansas City,* 705 F.2d at 1013; *see also City of Lafayette v. Louisiana Power & Light Co.,* 435 U.S. at 415, 98 S.Ct. at 1138.

As noted by the district court, the Arkansas legislature has clearly authorized the challenged municipal activity, the regulation of solid waste management and disposal. The Arkansas legislature in 1971 specifically required municipalities to develop solid waste management plans and authorized municipalities to provide for solid waste disposal and to enter into agreements to provide solid waste management systems. Ark.Stat.Ann. § 82–2705 (1976 repl. & Supp.1983) (Arkansas Solid Waste Management Act).[2] The legislature affirm-

---

2. The Arkansas Solid Waste Management Act, Ark.Stat.Ann. § 82–2701 *et seq.* (1976 repl.), provides in part:

    **82–2705. Municipal solid waste management systems.**—(a) All municipalities shall develop a plan to provide a solid waste management system and shall adequately provide for the disposal of solid wastes generated or existing within the incorporated limits of such municipality or in the area to be served thereby and in accordance with the rules, regulations, and orders of the Commission [or Department of Pollution Control and Ecology]. The governing body of the municipality may enter into agreements with a county or counties, with one or more other municipalities, with private persons or trusts, or with any combination thereof, to provide a solid waste management system or any part thereof for the municipality, but such agreement shall not relieve the parties thereto of their responsibilities hereunder.

    (b) The governing body of such municipality shall have the authority to levy and collect such fees and charges and require such licenses as may be appropriate to discharge its responsibility hereunder, and such fees, charges and licenses shall be based on a fee schedule as set forth in an ordinance.

    (c) Municipalities may accept and disburse funds derived from grants from the Federal or State Governments or from private sources or from moneys that may be appropriated from any available funds, for the installation and operation of a solid waste management system, or any part thereof.

    (d) Municipalities are authorized to contract for the purchase of land, facilities, vehicles and machinery necessary to the instal-lation and operation of a solid waste management system, either individually or as a party to a regional or county solid wastes authority.

    (e) The governing body of a municipality shall have the right to establish policies for and enact laws concerning all phases of the operation of a solid waste management system including hours of operation, character and kind of wastes accepted at the disposal site, the separation of waste according to type by those generating same prior to collection, type of container for storage of wastes, prohibition of burning of wastes, pre-treatment of wastes, and such other rules as may be necessary or appropriate, so long as such laws, policies, and rules are not inconsistent with this Act [§§ 82–2701–82–2712] or any rules, regulations, or orders of the Commission [or Department].

    **82–2713. Power of county and municipality.**—Any county or municipality in this State is hereby authorized to own, acquire, construct, reconstruct, extend, equip, improve, operate, maintain, sell, lease, contract concerning, or otherwise deal in facilities of any nature necessary or desirable for the control, collection, removal, reduction, disposal, treatment or other handling of refuse (with each such undertaking by a county or municipality hereunder sometimes referred to herein as a "project").

    **82–2719. Rates and charges.**—

    . . . .

    (c) Counties and municipalities are hereby authorized to prescribe, by order or ordinance, reasonable rules and regulations necessary or appropriate to the control, collection, removal, reduction, disposal treatment and handling of refuse.

atively granted municipalities the comprehensive and specific authority necessary for effective solid waste management, including the authority to enter into contracts for solid waste disposal, *id.* § 82–2713, and to regulate solid waste management by ordinance, *id.* § 82–2719(c).

The Arkansas Solid Waste Management Act does not expressly grant municipalities the power to grant exclusive solid waste disposal franchises. However, we agree with the district court that the legislative intent to displace competition can be inferred from the statutory scheme because it is a "necessary and reasonable consequence of engaging in the authorized activity." *Gold Cross Ambulance v. City of Kansas City*, 705 F.2d at 1013. Under the Arkansas Solid Waste Management Act municipalities are granted broad authority to regulate solid waste management and to enter into agreements to provide for solid waste management and disposal. Ark. Stat.Ann. § 82–2705. Regulation of solid waste management is one of the traditional public health functions of local government, and Arkansas law recognizes the validity of a municipal grant of a private monopoly in solid waste disposal. *See Geurin v. City of Little Rock*, 203 Ark. 103, 105–06, 155 S.W.2d 719, 720 (1941) (sewers); Ark.Stat.Ann. § 19–2319 (Supp. 1983) (exclusive agreements for providing public utilities). It certainly cannot be said that Arkansas has adopted a policy of indifference or "mere neutrality respecting the municipal actions challenged as anticompetitive." *Community Communications Co. v. City of Boulder*, 455 U.S. at 55, 102 S.Ct. at 843. Rather, we agree that the legislative scheme contemplates displacing competition with regulation in the area of solid waste management and disposal. *See Central Iowa Refuse Systems, Inc. v. Des Moines Metropolitan Solid Waste Agency*, 715 F.2d at 426–28.

In sum, we hold that the state action immunity doctrine is applicable to the city's award of the exclusive solid waste disposal franchise to Lake City. This holding makes any discussion of the question of Lake City's immunity under the *Noerr-Pennington* doctrine unnecessary. *See United Mine Workers v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965); *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961). Therefore, we affirm the district court's dismissal of the federal antitrust claims.

## CONSTITUTIONAL CLAIMS

As noted above, appellants in their complaint alleged that Ordinance No. 406 prevented them from engaging in the lawful business of solid waste disposal and as a result deprived them of a property interest in violation of the due process and equal protection clauses of the fourteenth amendment. The district court dismissed, holding that the city council members had absolute legislative immunity and that Lake City was protected by the *Noerr-Pennington* doctrine, slip op. at 9–12, and that appellants had failed to state a claim with respect to the bidding process, 585 F.Supp. at 122–30. We affirm the district court's dismissal of the constitutional claims for the reasons discussed below.

■ To the extent that appellants alleged that Ordinance No. 406 deprived them of substantive due process by restricting their right to contract for or provide solid waste disposal services, the district court correctly rejected that contention. The ordinance survives the rational basis test: the ordinance was designed to accomplish a legitimate government purpose, the protection of public health and safety, and there is a rational relationship between the regulation of solid waste disposal and the protection of public health and safety. *See Scott v. City of Sioux City*, 736 F.2d at 1216; *Gold Cross Ambulance v. City of Kansas City*, 705 F.2d at 1015–16; *Hybud Equipment Corp. v. City of Akron*, 654 F.2d 1187, 1192–94 (6th Cir. 1981) (solid waste disposal as valid exercise of police power), *vacated and remanded on other grounds*, 455 U.S. 931, 102 S.Ct. 1416, 71 L.Ed.2d 640 (1982).

A similar rational basis analysis disposes of appellants' equal protection claim be-

cause Ordinance No. 406 does not involve a fundamental right or a suspect class. *See Gold Cross Ambulance v. City of Kansas City,* 705 F.2d at 1015–16.

Analysis of appellants' procedural due process claim is more difficult. As noted by the district court, appellants are not challenging the city's failure to provide them with pre-deprivation procedural due process—notice and an opportunity to be heard. 585 F.Supp. at 129–30. Rather, appellants alleged that the city acted arbitrarily and capriciously in awarding the exclusive solid waste disposal franchise to Lake City. In other words, L & H Sanitation claimed that the award was the result of a "sweetheart deal" between the city and Lake City. 585 F.Supp. at 123–25, *citing Winsett v. McGinnes,* 617 F.2d 996 (3d Cir.1980), *cert. denied,* 449 U.S. 1093, 101 S.Ct. 891, 66 L.Ed.2d 822 (1981), *Teleprompter of Erie, Inc. v. City of Erie,* 567 F.Supp. 1277 (W.D.Pa.1983), *Douglas N. Higgins, Inc. v. Florida Keys Aqueduct Authority,* 565 F.Supp. 126 (S.D.Fla.1983), *Teleprompter of Erie, Inc. v. City of Erie,* 537 F.Supp. 6 (W.D.Pa.1981), *Kendrick v. City Council,* 516 F.Supp. 1134 (S.D.Ga. 1981), *and Three Rivers Cablevision, Inc. v. City of Pittsburgh,* 502 F.Supp. 1118 (W.D.Pa.1980). *See also Greenholtz v. Inmates of Nebraska Penal & Correctional Complex,* 442 U.S. 1, 12, 99 S.Ct. 2100, 2106, 60 L.Ed.2d 668 (1979); *Gold Cross Ambulance v. City of Kansas City,* 705 F.2d at 1016–17 & n. 18 (legitimate claim of entitlement can arise from procedures established in statutes or regulations adopted by state or political subdivision), *citing Wilson v. Robinson,* 668 F.2d 380, 382–83 (8th Cir.1981).

The district court held that "under Arkansas law governing competitive bidding on public contracts, the lowest responsible bidder in compliance with the bidding specifications and procedures has a legitimate expectation in being awarded the contract once the governmental body makes a decision to award the contract on which bids were solicited." 585 F.Supp. at 126, *citing Walt Bennett Ford, Inc. v. Pulaski County Special School District,* 274 Ark. 208, 211–12, 624 S.W.2d 426, 428 (1981). The district court, however, concluded that appellants had failed to state a due process claim "because they have available to them a full and fair opportunity in the state courts of Arkansas to seek redress for their grievances concerning the awarding of the bid to Lake City." *Id.* at 127. The district court therefore dismissed, holding that appellants failed to allege a claim of denial of due process of law because they could seek complete post-deprivation relief in the Arkansas state courts by bringing an action for judicial review. *Id.* at 125–30, *citing Walt Bennett Ford, Inc. v. Pulaski County Special School District,* 274 Ark. at 211–12, 624 S.W.2d at 428; *see Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).

We disagree with the district court's analysis to the extent that the district court concluded that *Parratt v. Taylor* bars appellants' due process claim because of the availability of state post-deprivation remedies. *See Begg v. Moffitt,* 555 F.Supp. 1344, 1353–65 (N.D.Ill.1983) (excellent discussion). In our view, *Parratt v. Taylor* does not establish some sort of general exhaustion of available state remedies requirement or alter the essentially supplementary remedial character of § 1983 actions. *See Patsy v. Board of Regents,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982); *Monroe v. Pape,* 365 U.S. 167, 183, 81 S.Ct. 473, 481, 5 L.Ed.2d 492 (1961), *overruled in part on other grounds, Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). As explained in *Begg v. Moffitt,*

> *Parratt* does not bar a § 1983 action based on the assertion of a substantive constitutional right, rather than the right to have a deprivation accompanied by certain procedural protections.... [S]ome governmental conduct violates due process no matter what types of procedural protections accompany the conduct. In such cases, those acting under color of state law violate a substantive constitutional right entirely separate from the right to procedural due process,

and those injured may seek redress under the due process clause. In cases where the right asserted does not depend on the procedural protections accorded the plaintiff, the availability of a postdeprivation hearing is no defense, since the constitutional violation exists independent of the procedures for redressing the deprivation that are available. By violating such substantive rights, the state actors deprive persons of constitutional rights irrespective of the procedures employed, and the constitutional violation is complete at the time of the deprivation.

555 F.Supp. at 1362 (citations and footnotes omitted); *see. also Barbian v. Panagis,* 694 F.2d 476, 480 (7th Cir.1982); *Hixon v. Durbin,* 560 F.Supp. 654, 661 (E.D.Pa.1983); *Three Rivers Cablevision, Inc. v. City of Pittsburgh,* 502 F.Supp. at 1131.

■ Here, L & H Sanitation's claim of denial of due process was complete at the time the city arbitrarily made the award. The availability of state remedies should not bar L & H Sanitation's federal § 1983 remedy for denial of the right to non-arbitrary government decision-making.

■ The above discussion assumed for purposes of analysis that L & H Sanitation had a protected property right under Arkansas law. However, as determined by the district court, "under Arkansas law governing competitive bidding on public contracts, the lowest responsible bidder in compliance with the bidding specifications and procedures has a legitimate expectation in being awarded the contract once the governmental body makes a decision to award the contract." 585 F.Supp. at 126. We do not believe that L & H Sanitation's bid can be considered to have been in material compliance with the bidding specifications because it was conditioned upon the use, at least temporarily, of the city landfill. As noted above, L & H Sanitation's bid contemplated the initial use of the city landfill, pending the approval of L & H Sanitation's own landfill site by government environmental protection agencies. It is clear from the record that one of the bidding specifications for the solid waste disposal franchise was the use of another landfill. Pollution problems caused by the city landfill had prompted the city to investigate solid waste disposal alternatives. For this reason, L & H Sanitation could not have had a legitimate expectation in being awarded the contract and thus did not have a protected property interest for purposes of due process analysis.

Whether L & H Sanitation did not know the city landfill would be closed and unavailable because the city improperly failed to inform L & H Sanitation of this or any other specification, and thus failed to comply with the law governing competitive bidding, is a distinct question which can be litigated in state court. *See, e.g., Walt Bennett Ford, Inc. v. Pulaski County Special School District,* 274 Ark. at 211, 624 S.W.2d at 428. As noted by the district court, appellants can in the state courts "challenge the award of the bid on the grounds that the city 'acted in bad faith, with favoritism, or for any other reason except a determination that [awarding the contract to Lake City] was in the best interest of the [c]ity.'" 585 F.Supp. at 126, *citing Worth James Construction Co. v. Jacksonville Water Comm'n,* 267 Ark. 214, 217, 590 S.W.2d 256, 258 (1979).

The remaining appellants did not submit bids for the solid waste disposal franchise and therefore cannot assert a protected property interest under Arkansas law as unsuccessful bidders. However, the remaining appellants would have standing as taxpayers under Arkansas law to challenge the bid award in state court. *See Worth James Construction Co. v. Jacksonville Water Comm'n,* 267 Ark. at 217, 590 S.W.2d at 258 (taxpayer standing).

In sum, we hold the district court did not err in dismissing appellants' § 1983 claim challenging the city's allegedly arbitrary award of the contract for failure to state a claim because neither L & H Sanitation nor any of the remaining appellants had a protected property interest under Arkansas law.

Accordingly, the order of the district court is affirmed.