GRUENDER, Circuit Judge.
Larry Harris appeals the order of the district court[1] granting summary judgment to the City Council of North Little Rock and the city’s mayor and five city council members in their official and individual capacities (collectively, “the defendants”) on Harris’s claims of discrimination and deprivation of a property right under 42 U.S.C. §§ 1981 and 1983. For the reasons discussed below, we affirm the judgment of the district court.
I. BACKGROUND
The City of North Little Rock, Arkansas (“City”) implemented the Wear 2000 Sidewalk Program” to bring city sidewalks into compliance with the Americans with Disabilities Act. The City opened Phase I of the project for bids, expressly stating in the bid package that the City reserved the right to add or subtract sidewalks from the contract as funds allowed. Harris, an African-American, submitted the lowest bid of $558,300 and was awarded the Phase I contract. The City subsequently removed some sidewalks from the package, and Harris signed the Phase I contract for $330,000.
Some of the sidewalks removed from the Phase I contract later were included in the *717 Phase II contract. The lowest bid of $335,444 for the Phase II contract was submitted by Tom Brooks, a Caucasian. Harris’s bid of $479,459 was only the sixth-lowest bid. The City awarded Phase II to Brooks. Again, the City removed sidewalks from the package, and in 2001 Brooks signed the Phase II contract for $179,000.
Brooks had never performed work for the City before, but he was well-acquainted with City Engineer Mike Smith and had done work on Smith’s residence. Brooks also was acquainted with at least two of the City council members. During performance of the Phase II contract, Brooks offered to keep his price-per-square-foot constant at the 2001 level if the City agreed to extend his contract for successive phases without re-bidding. Smith informed the City Council that the price of new bids likely would rise each year and that, in his opinion, Brooks’s offer was financially advisable. The City Council passed an ordinance extending the contract with Brooks without new bids.
Arkansas law required a municipality to award contracts exceeding $10,000 through competitive bidding, except “in exceptional situations where [competitive bidding] is deemed not feasible or practical” by the city government. Ark.Code Ann. § 14-58 — 303(b)(2) (2001). The City generally provided for waiver of competitive bidding only in “emergency” situations involving imminent danger of damage. No evidence of an emergency was advanced to justify the award of the extended sidewalk contract to Brooks without competitive bidding.
When the Year 2000 Sidewalk Program finally was opened again to competitive bidding in 2004, Brooks and seven other contractors submitted bids. Harris did not bid. The contract was awarded to an African-American contractor who was the lowest bidder.
Harris brought a claim against the defendants under 42 U.S.C. § 1981 for racial discrimination in the awarding of the Phase II contract and a claim under 42 U.S.C. § 1983 for deprivation of a property right under color of state law in violation of due process. The defendants moved for summary judgment on the ground that the challenged contract decisions were made for financial reasons.[2] The district court granted the summary judgment motion, holding that Harris failed to create a reasonable inference that the contract decision was based on racial discrimination and that Harris had no property right in the extended portion of the Phase II contract. Harris appeals.
II. DISCUSSION
“We review a grant of summary judgment de novo, viewing the facts in the light most favorable to the non-moving party.” Cottrill v. MFA, Inc., 443 F.3d 629, 635 (8th Cir.2006).
A. The § 1981 Claim
Section 1981 protects citizens’ rights to make and enforce contracts. The McDonnell Douglas burden-shifting framework applies to motions for summary judgment in cases arising under § 1981 where there is no direct evidence of discrimination.[3] Roxas v. Presentation College, 90 F.3d 310, 315 (8th Cir.1996). Un *718 der this framework, the claimant first must establish a prima facie case of discrimination; if a prima facie case is established, the burden of production shifts to the defendant to show a legitimate, npndis-criminatory reason for the challenged action; and if the defendant proffers such a reason, the burden of production shifts back to the claimant to establish that the proffered reason is a mere pretext for discriminatory animus. Id. at 315-16. “A plaintiff establishes a prima facie case under § 1981 by showing (1) membership in a protected class; (2) the intent to discriminate on the basis of race on the part of the defendant; and (3) discrimination interfering with a protected activity (i.e., the making and enforcement of contracts).” Daniels v. Dillard’s, Inc., 373 F.3d 885, 887 (8th Cir.2004). One way for the claimant to establish the second element, the defendant’s intent to discriminate, is to show that he was treated differently from similarly situated nonmembers of the protected class. Turner v. Gonzales, 421 F.3d 688, 694 (8th Cir.2005).
Harris did not establish his prima facie case because he did not present evidence sufficient to create an inference that the defendants intended to discriminate against him on the basis of race.[4] Harris argues that he was treated differently from Brooks in several respects and that Brooks, a Caucasian, was a similarly situated nonmember of the protected class. However, each of Harris’s allegations of disparate treatment fails.
First, Harris notes that the value of his Phase I contract was reduced from $558,300 to $330,000 and that some of the removed work was shifted to the Phase II contract awarded to Brooks. However, the bid solicitation expressly reserved the right to add or remove work based on available funding, and in fact Brooks’s Phase II contract also was reduced from $335,444 to $179,000. Therefore, Harris was not treated differently from Brooks.
Second, Harris cites as evidence of discriminatory intent the City’s decision to extend additional work under Brooks’s Phase II contract without competitive bidding after the City refused Harris’s request to extend Ms Phase I contract without competitive bidding. Again, Brooks was not similarly situated to Harris because Brooks offered to keep his price-per-square-foot constant at the 2001 level for three years if the City agreed to the extension, while Harris did not make a similar pricing offer in his request for extra work.
Third, Harris notes that at some point during Brooks’s contract, Brooks was allowed to ignore the contract specification to use Nycon, an expensive concrete additive. Harris contends that he could have submitted a lower Phase II bid if he had been told that the Nycon requirement would not be enforced. There is no disparate treatment in this instance because Brooks and the other four contractors who submitted lower Phase II bids than Harris had to account for the cost of Nycon when they bid the contract, just as Harris did. Absent evidence that at the time of bidding the City informed Brooks, but not the African-American bidders, that the Nycon *719 requirement would be dropped at some point, this later change does not create an inference of discrimination against Harris in the awarding of the contract.
Fourth, Harris argues that the City inspected Brooks’s work less rigorously than it inspected Harris’s work during Phase I. The deposition testimony on which Harris relies suggests that, at most, City Engineer Smith was very informal when working with Brooks because of their social relationship. Again, this evidence does not create an inference of racial discrimination in the awarding of the contract.[5]
Because Harris did not present sufficient evidence to create an inference of an intent to discriminate on the basis of race on the part of the defendants, Harris cannot establish a prima facie case for his § 1981 claim. Therefore, the grant of summary judgment to the defendants on that claim is appropriate.
B. The § 1983 Claim
Harris claims that the extension of Brooks’s Phase II contract in contravention of Ark.Code Ann. § 14 — 58—303(b)(2) violated Harris’s due process property right in the extended portion of the contract. “To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.” Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Arkansas statutes create a property interest in a competitively bid public contract for the lowest bidder that complied with the bidding specifications and procedures. L & H Sanitation, Inc. v. Lake City Sanitation, Inc., 769 F.2d 517, 524 (8th Cir.1985).
We need not decide whether a similar protected property right arises in a public contract that should have been, but was not, open to competitive bidding. Assuming arguendo that such a property right would be recognized, Harris at a .minimum would have to show that he would have been the lowest bidder on the extended portion of the contract, and thus would have had “a legitimate claim of entitlement to it,” had it been opened to bidding. Although Harris was the lowest bidder on the Phase I contract in 2000, he was only the sixth-lowest bidder on the Phase II contract in 2001. This falls far short of establishing any claim that Harris would have been the lowest bidder for 2002 or 2003. In the absence of evidence that Harris would have had a property interest in the extended portion of the contract, Harris’s § 1983 claim fails.
III. CONCLUSION
We conclude that the district court did not err in granting summary judgment to the defendants on Harris’s § 1981 and § 1983 claims. Therefore, we affirm the judgment of the district court.

. The Honorable William R. Wilson, Jr., United States District Judge for the Eastern Dis-Irict of Arkansas.

. The defendants also asserted that they were protected by qualified and legislative immunity in passing the city ordinance extending Brooks's contract without bidding. The district court did not address this defense, and it is not necessary for this Court to reach its merits on appeal.

. Harris concedes that there is no direct evidence of discrimination.

. Harris claims that the district court erred in its application of the McDonnell Douglas framework because the district court relied on a nondiscriminatory justification for the defendants' actions, "cronyism,” which was not advanced by the defendants as a legitimate, nondiscriminatory reason for the challenged action. However, the district court actually held that Harris failed to establish an element of his prima facie case because the evidence created no inference that the defendants intended to discriminate against Harris on the basis of race, but rather only an inference that the defendants intended to favor Brooks due to cronyism.

. We agree with the concurring opinion’s statement, post at 10, that "evidence that the defendants here had a non-racial reason for treating Brooks and Harris differently should [not] mean that Harris failed to make a prima facie case.” Instead, we find that Harris failed to make a prima facie case with regard to inspections because the record evidence cited by Harris does not, in fact, suggest that Harris's work was inspected differently from Brooks's work. Harris himself summarizes the allegedly disparate treatment with regard to inspections by stating that City Engineer Smith and Brooks "visited together, enjoyed lunch, or ate pretzels from the jar Mr. Smith kept on his desk” in addition to reviewing Brooks's work. Appellant's Brief at 17. Notwithstanding Harris's assertions to the contrary, none of the evidence cited by Harris suggests that the actual inspection of Brooks's work was different from the inspection of Harris's work.