785 F.2d 308
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
ROBERT KASOM d/b/a BOB'S LANDSCAPING SERVICE, Plaintiff-Appellant,
v.
CITY OF STERLING HEIGHTS, a Michigan Municipal Corporation,
JOSE BENAVIDES, BOWMAN K. CHUNG, ART MADAR, JERRY V. MANN,
MARY L. MARCINAK, CHARLES S. MARLING, and NANCY L. ULRICH,
jointly and severally, Defendants-Appellees.
 85-1140
 United States Court of Appeals, Sixth Circuit.
 1/31/86
 
 Before: KENNEDY and CONTIE, Circuit Judges; and GIBSON,* District Judge.
 PER CURIAM:
 
 
 1
 Plaintiff-Appellant appeals from a Rule 41(b), Fed. R. Civ. P., involuntary dismissal at trial of his suit complaining that defendants-appellees, the City of Sterling Heights, Michigan, and its City Council members, violated the fourteenth amendment by favoring local companies in its process for awarding a weed-cutting contract. Appellant, Robert Kasom, asserts that after the city solicited and received bids for the project, it disregarded the results and solicited a new round of bids in an attempt to award the contract to a Sterling Heights company. Appellant, whose business is not located in Sterling Heights, claims that he had a due process property interest in the award of the weed-cutting contract, because he submitted the lowest responsible bid in the first round of bidding, and also that the city's de facto residency requirement violates the equal protection clause. Appellant also raises analogous state law claims under the Michigan Constitution.
 
 
 2
 Most of the facts are stipulated by the parties, although their interpretation is in dispute. On February 24, 1982, the city published an invitation to bid on a three-year weed-cutting contract in a local newspaper, The Advisor. The city also sent requests to bid to all individuals who were on the city's bid list for such projects. The bid specifications provided to potential bidders contained the following provision:
 
 
 3
 The City of Sterling Heights reserves the right to reject any and all bids, to waive any informalities in the bidding and to accept any bid it deems in the best interest of the City.
 
 
 4
 The City received seven sealed bids. Each of the seven bidders, including appellant, satisfied all of the requirements set forth in the bid specifications. At a special City Council meeting on April 19, 1984, one Council member suggested rejecting all of the bids and starting over. The following comments were made at the meeting by him or other members:
 
 
 5
 I would recommend that we forget it. For one reason, we have on this list two, four, six, eight companies, two, four, six, seven companies. Right? The company suggested is in St. Clair Shores. I went through a telephone book, the East Side Telephone Directory that I got last week, a brand new one. We have nine landscaping companies in the City of Sterling Heights and not one of them was asked to bid on it.
 
 
 6
 .............................................................
 
 
 7
 ...................
 
 
 8
 * * *
 
 
 9
 I would like to postpone it so that I can check it out further, please.
 
 
 10
 .............................................................
 
 
 11
 ...................
 
 
 12
 * * *
 
 
 13
 There was a local--a local contractor that used to do the weed cutting for the City, and he's not too far away from this--from this building . . ..
 
 
 14
 .............................................................
 
 
 15
 ...................
 
 
 16
 * * *
 
 
 17
 I just thought it was odd that we wouldn't send it out to the City--
 
 
 18
 At the regular City Council meeting held the next day, Barry Feldman, the City Manager, stated:
 
 
 19
 There are landscape contractors in the community. We have no assurance, of course, that any of them would bid; but to please this Council, we can rebid this for special notification given to local landscape contractors. I don't think it would delay us.
 
 
 20
 That was the full extent of the comments on the contract. The Council voted unanimously to reject all bids and start the process over.
 
 
 21
 The major factual dispute in this case is, why did the City Council reject all bids and start over? Appellant argues that his bid was rejected because he was not a Sterling Heights resident and that the Council wanted the contract to go to a Sterling Heights resident. Appellees assert that their purpose was to ensure a sufficient number of bids to get a competitive price. The District Court rejected both proferred reasons and found that the most the evidence established was that the Council wanted to be sure that local businesses had received adequate notice to be given a fair opportunity to bid on the project.
 
 
 22
 After the Council ordered the project to be re-bid, Ronald Guzi, the city's Purchasing Director, compiled a list of eleven Sterling Heights landscaping companies from the telephone directory. He then notified those eleven companies, and the original seven bidders, that the project was open for re-bidding. Appellant chose not to change his original bid. The city received a total of four bids in response to its second bid notification; all from original bidders. This time, appellant's bid was only third lowest, and, accordingly, he was not awarded the contract.[1]
 
 The Due Process Claim
 
 23
 Appellant's first contention is that he has been deprived of property without due process of law, in violation of the fourteenth amendment. The District Court rejected this argument, because it found that appellant failed the first prong of the due process test; he could not show that he was deprived of a property interest. See Mathews v. Eldridge, 424 U.S. 319 (1976). The landmark case of Board of Regents v. Roth, 408 U.S. 564 (1972), sets forth the general requirements for establishing a property interest under the due process clause:
 
 
 24
 To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.
 
 
 25
 Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law--rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.
 
 
 26
 Id. at 577. The Court noted more recently that it has emphasized that '[t]he hallmark of property . . . is an individual entitlement grounded in state law, which cannot be removed except 'for cause." Logan v. Zimmerman Brush Co., 455 U.S. 422, 430 (1982).
 
 
 27
 In the instant case, there is no state statute or rule governing competitive bidding on municipal contracts. Appellant asserts that his property interest can be found in the city charter and in the city's established bidding practice. The relevant charter provision, section 13.01, states:
 
 
 28
 The city may contract for the performance of any public work or may perform the same itself through its departments, officers and employees; provided, however, that it shall not make any public improvements exceeding an estimated five thousand ($5,000.00) dollars until it has first advertised for sealed proposals therefor. The city shall have the right to reject any and all such proposals.
 
 
 29
 Appellant also relies on Michigan Supreme Court cases holding that 'a charter provision requiring competitive bidding is mandatory . . ..' Knights of the Iron Horse v. Detroit, 300 Mich. 467, 476, 2 N.W.2d 466 (1942). Finally, appellant claims that the trial testimony evidenced an established city practice of awarding contracts to the lowest bidder.
 
 
 30
 The city charter provision in this case gives the city the right to reject any and all sealed proposals--or bids. This language in the charter is buttressed by the statement in the bid specifications that the city reserves the right to reject any and all bids. With such language in the charter, appellant cannot rely on it as a source for a legitimate claim of entitlement to an award of the weed-cutting contract.[2]
 
 
 31
 The evidence offered of an established practice of awarding contracts to the lowest bidder does not support appellant's claim either. The record substantiates the District Court's conclusion that there were instances where the Sterling Heights City Council rejected all bids on a project or where the Council failed to award a contract to the lowest responsible bidder. Furthermore, the Supreme Court has held that a practice alone is insufficient to generate a property interest. See Regents of the University of Michigan v. Ewing, 54 U.S.L.W. 4055, 4058 n.9 (U.S. Dec. 12, 1985) ('[a] property interest in a second examination, however, cannot be inferred from a consistent practice without some basis in state law'); Connecticut Bd. of Pardons v. Dumschat, 452 U.S. 458, 465 (1981) ('A constitutional entitlement cannot 'be created--as if by estoppel--merely because a wholly and expressly discretionary state privilege has been granted generously in the past.' [citation omitted].' (emphasis in original)). The Sixth Circuit has also held that where the statute is purely discretionary, no property right is established. See Wagner v. Gilligan, 609 F.2d 866, 867 (6th Cir. 1979).
 
 
 32
 The instant case is therefore distinguishable from other cases dealing with an asserted property right arising out of a bid on a public contract. See, e.g., Kendrick v. City Council of Augusta, 516 F. Supp. 1134 (S.D. Ga. 1981); Three Rivers Cablevision v. City of Pittsburgh, 502 F. Supp. 1118 (W.D. Pa. 1980). Similarly, our decision in Owen of Georgia, Inc. v. Shelby County, 648 F.2d 1084 (6th Cir. 1981), a diversity case involving Tennessee law, is premised on the interpretation of a state statute limiting the local government's power to reject bids. Furthermore, in this case, unlike those mentioned above, the contract was eventually awarded, pursuant to a legitimately conducted bid, to the lowest responsible bidder. Thus, appellant was not deprived of any property right when the contract was awarded.
 
 The Equal Protection Claim
 
 33
 Appellant's equal protection claim is premised on the assumption that appellant was refused the contract due to a residency requirement. Thus, we need only decide whether the District Court's finding that there was no residency requirement is clearly erroneous. See D.E. Rogers Associates, Inc. v. Gardner-Denver Co., 718 F.2d 1431, 1434-35 (6th Cir. 1983) (noting that the standard of review for a Rule 41(b) dismissal is whether the dismissal was 'clearly erroneous'), cert. denied, 104 S. Ct. 3513 (1984). We hold that it is not.
 
 
 34
 The District Court found that the reason the first set of bids was rejected was that the Council felt local businesses had not received adequate notice of the proposed weed-cutting contract and thus were deprived of an opportunity to bid on it. The District Court heard the testimony of Ronald Guzi, the city's Purchasing Director, and William Lange, Administrative Aide for the Department of Public Works, both of whom stated that the reason City Council members conducted a second bid was their desire to give local companies a chance to bid. The contract eventually went to a non-resident, and the city passed up the opportunity to award the contract to a local company that had submitted a reasonable bid the first time around. In light of such a record, the District Court's finding that there was no residency requirement is not clearly erroneous, and thus no colorable equal protection claim is made out.[3]
 
 
 35
 The judgment of the District Court is affirmed.
 
 
 
 *
 Honorable Benjamin F. Gibson, Judge, United States District Court for the Western District of Michigan, sitting by designation
 
 
 [1]
 The lowest bidder was unable to post the required performance bond, and thus the contract went to the second lowest bidder. Neither of these two bidders was a Sterling Heights company
 
 
 [2]
 Knights of the Iron Horse, supra, is distinguishable on the ground that it did not deal with a charter with such a reservation of power to reject bids. Furthermore, that case dealt with whether a city could be held to a contract that was awarded outside of the bid process, and does not apply to the situation here where the contract was eventually awarded to a lowest bidder
 
 
 [3]
 In light of our holding that there was no residency requirement, we do not reach the question whether such a requirement could survive an equal protection challenge